Argued and submitted September 23, 1996, affirmed May 21, petition for review denied July 29, 1997 (325 Or 621)

STATE OF OREGON,
*Respondent,*

*v.*

IRVIN G. WETZELL,
*Appellant.*

(95CR-0074; CA A91513)

939 P2d 106

Sally L. Avera, Public Defender, and Hari Nam S. Khalsa, Deputy Public Defender, argued the cause and filed the brief for appellant.

Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Judith Brant, Assistant Attorney General, argued the cause and filed the brief for respondent.

Before Warren, Presiding Judge, and Edmonds and Armstrong, Judges.

EDMONDS, J.

Armstrong, J., dissenting.

**EDMONDS, J.**

Defendant appeals his conviction for driving under the influence of intoxicants (DUII). ORS 813.010. He assigns error to the trial court's denial of his motion to suppress evidence. We affirm.

On September 16, 1994, Oregon State Police Officer Decker was patrolling on Highway 20 near the Santiam Pass. At approximately 9:25 p.m., he saw defendant driving his pickup truck around a curve 10 to 20 miles faster than most drivers were taking the curve. He decided to follow defendant. Within a mile, he saw defendant cross the yellow dividing line, cross the fog line twice, pass a recreational vehicle without signaling, leave his high beam lights on while approaching oncoming traffic, and drive outside his lane of traffic "deep into the yellow solid line." Decker turned on his emergency lights to stop defendant. When defendant pulled over to the shoulder of the highway, he skidded to a stop, braking abruptly. Decker testified that in his experience very few people "skid" to a stop in that manner.

Decker got out of his car and approached defendant's vehicle. Defendant rolled his pickup window approximately half way down. Decker observed that defendant was the only person in the pickup and that there was a "strong" odor of alcohol emanating from the vehicle. Although the temperature was not warm, defendant had a "very flushed, clammy or sweaty face." His movements were slow and deliberate, his eyes were "very bloodshot," and he had a "glazed, drawn look about him." When Decker engaged defendant in conversation, defendant was uncooperative. His voice was tentative and possibly slurred. Throughout the exchange, defendant was "smiling to himself, as if he were telling himself a secret joke." Defendant refused to roll the window down all the way or, when requested, to get out of the vehicle.

Based on the odor of alcohol and defendant's actions, Decker believed that there was "a good chance that [defendant] was DUII." To prevent defendant from driving away, Decker asked him to open his pickup door. When defendant refused, Decker opened the door himself. Decker asked defendant to perform some field sobriety tests in the vehicle

and warned him that a refusal could be used against him in court. Defendant refused. Decker then asked defendant to perform field sobriety tests outside the vehicle and defendant again refused to perform. Decker testified that, at this point, he was "certain that defendant was under the influence and arrested him." After resisting arrest, defendant was taken into custody and charged with DUII. This appeal arises from his subsequent conviction.

Defendant argues that Decker conducted a warrantless search prohibited by Article I, section 9, of the Oregon Constitution, by opening the pickup door without subjective probable cause. In *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986), the court said:

"Probable cause under the Oregon Constitution has both a subjective and an objective component. An officer must subjectively believe that a crime has been committed and thus that a person or thing is subject to seizure, and this belief must be objectively reasonable in the circumstances. The test is not simply what a reasonable officer *could have* believed when he conducted a warrantless search or seizure, but it is what [the] officer actually believed, based upon the underlying facts of which he was cognizant, together with his own training and experience. Neither is the test whether the officer articulates to the suspect the basis for a second ground for arrest. What is required is that the officer formulates such a basis to himself at the time he acts." (Emphasis in original.)

Defendant argues that although Decker may have had sufficient "reasonable suspicion" to initiate a stop under ORS 131.615 and ORS 810.410, he lacked the required subjective belief to permit him to open the car door. The state agrees that the opening of the door of the pickup constituted a search but argues that the search was proper because it was conducted with objective and subjective probable cause under exigent circumstances.

"Probable cause" means that it is more likely than not that seizable things will be found in the person or location to be searched. *State v. Anspach*, 298 Or 375, 380, 692 P2d 602 (1984). Probable cause does not require certainty or proof beyond a reasonable doubt, which is necessary to convict an individual of a crime. *State v. Spicer*, 254 Or 68, 70, 456 P2d

965 (1969). In this case, it is clear that defendant's driving and the odor of alcohol that emanated from his vehicle when the officer first approached constituted objective probable cause. Nonetheless, defendant and the dissent maintain that Decker lacked the subjective belief that it was more likely than not that defendant was under the influence before Decker opened the vehicle door.

In context, the most probative evidence on Decker's state of mind before he opened the pickup door is his testimony that he had concluded that there was "a good chance that defendant was DUII" and that he opened the door in order to prevent defendant from driving away. There is evidence that Decker suspected that defendant was driving under the influence because of defendant's driving before he stopped defendant. The odor of alcohol and defendant's other actions after Decker approached defendant's vehicle added to Decker's suspicion. The dissent's approach would require an officer to articulate magic words that express the requisite legal standard. However, in some cases the officer's belief that a crime has been committed by the defendant is evident from the circumstances, and there is more than one way to express that it is more likely than not that a crime has been committed. In the context of these facts, the officer's testimony that there was "a good chance that defendant was DUII" supports the trial court's finding[1] that Decker possessed the requisite belief. We agree with the trial court that

---

[1] The dissent makes much of the fact that the trial court did not explicitly find that Decker had subjective probable cause before he opened the car door. However, the trial court made a number of express findings about Decker's state of mind and the circumstances. At the time of the stop but before Decker approached defendant's vehicle, the court found:

"Trooper Decker had probable cause to believe several traffic infractions had occurred and a reasonable suspicion that defendant was under the influence of alcohol."

The trial court also found that when Decker approached the vehicle, he noticed

"an odor of intoxication emanating from the vehicle and other signs of intoxication. * * * To prevent defendant from driving off, Trooper Decker opened the door of defendant's vehicle. * * * Once the trooper opened the door of defendant's vehicle, he became sure defendant was under the influence of intoxicating liquor."

There is evidence to support all of those findings. Based on them, the trial court concluded that Decker's subsequent actions were lawful. It is apparent from the court's findings about the progression of Decker's beliefs that the officer's reasonable suspicion that defendant was operating his vehicle under the influence of intoxicants escalated into the state of mind that defendant had to be stopped from driving further for the protection of everyone on the road. A finding about that

Decker's belief was more than a mere suspicion or possibility before he opened the door of defendant's vehicle. Accordingly, the trial court did not err in denying defendant's motion.

Affirmed.

**ARMSTRONG, J.,** dissenting.

The majority concludes that, before Decker opened the pickup door, he had a subjective belief that it was more likely than not that defendant was driving under the influence of intoxicants. Because the trial court did not make that finding and the evidence does not support doing so, I dissent.

Although defendant argued at the suppression hearing that, by opening the door, Decker conducted a search that he did not have probable cause to conduct, the trial court did not make any findings related to that argument. Instead, the trial court found that Decker had opened the car door "[t]o prevent defendant from driving off." It concluded that

> "Decker had a right to open defendant's car door to further make his inquiry and for his and the public's safety. Defendant did not have to answer * * * Decker's questions, but * * * Decker was not required to stand outside defendant's vehicle indefinitely on an unsafe stretch of highway."

The state concedes on appeal that the trial court did *not* explicitly find that Decker had probable cause to conduct a search before he opened the pickup door. Despite the record and the state's concession, the majority nevertheless concludes that

> "[i]n the context of these facts, the officer's testimony that there was 'a good chance that defendant was DUII' supports *the trial court's finding that Decker possessed the requisite belief. We agree with the trial court that Decker's belief was more than mere suspicion or possibility before he opened the door of defendant's vehicle.*"

148 Or App at 126-27 (emphasis supplied; footnote omitted). The trial court did *not* reach the conclusion that the majority

---

kind of state of mind is, at a minimum, tantamount to the belief that, more likely than not, defendant had committed a crime.

ascribes to it, because it did *not* decide the motion on the ground that Decker had probable cause to conduct the search. It decided it on the ground that Decker did not need probable cause to do what he did.

Moreover, in the context of these facts, it is impossible to reach the conclusion that the majority reaches. It reaches its conclusion by ignoring Decker's testimony, which indicates that he believed only that he had a reasonable suspicion that defendant was driving under the influence of intoxicants when he opened the pickup door. Decker testified that, as he approached defendant's pickup after pulling him over, he thought that there was "a good chance" that defendant was driving under the influence of intoxicants. The trial court found that, at that point, Decker had "probable cause to believe several traffic infractions had occurred and a reasonable suspicion that defendant was under the influence of alcohol." The state had the burden to show that, before Decker opened the pickup door, his suspicion had risen to a belief that it was more likely than not that defendant was driving under the influence of intoxicants. *See State v. Ehly*, 317 Or 66, 854 P2d 421 (1993) (reasonable suspicion standard intended to be less than probable cause standard).

The state failed to meet that burden. After describing his initial interaction with defendant, Decker testified:

"Q: While you were talking to him did you form any opinion about him being under the influence of intoxicants?

"A: Well, I was thinking that there was a *good chance* that he was DUII. *I wanted to investigate that further, I wasn't about to let him go down the road before I ascertained for sure that he was sober or drunk.*

"Q: Did you open his door at any time?

"A: Yes, I did. He wouldn't open it for me and, in terms of traffic safety, I wanted to get the door open so I could yank his keys. And if he decided to leave—I didn't want him to leave because *I wanted to check him out*."

On cross-examination, Decker testified that

"the purpose of opening the door, my most major concern was: *this guy may or may not be under the influence.* I don't want him going down the road. He was uncooperative at this point and I didn't want him driving off."

(Emphasis supplied.) It was only after defendant had refused to perform field sobriety tests, which occurred after Decker had opened the pickup door, that Decker became "certain" that defendant was driving under the influence of intoxicants.

Decker did not have to be certain that defendant was driving under the influence of intoxicants before he conducted the search, *State v. Rusnak*, 128 Or App 488, 491, 876 P2d 848 (1994), but the state did have to establish that Decker believed that it was more likely than not that defendant was driving under the influence of intoxicants at that time. The state failed to do that. The majority reaches the contrary conclusion by merging the objective and the subjective components of the test. That is precisely what the Supreme Court cautioned courts against doing in *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986):

> "The test is not simply what a reasonable officer *could have* believed when he conducted a warrantless search or seizure, but it is what [the] officer *actually* believed[.]"

Id. (emphasis altered). The majority states that "[t]he odor of alcohol and defendant's other actions after Decker approached defendant's vehicle added to Decker's suspicion." 148 Or App at 126. Despite what that evidence *could* have led Decker to believe, however, after viewing that evidence, Decker testified that he still believed that there was "a good chance" that defendant was driving under the influence of intoxicants. Thus, he used the same words to describe his belief at two different times in the encounter: as he approached the vehicle and before he opened the door. The majority claims that I would require an officer to articulate "magic words" to satisfy the subjective belief standard, but it uses magic of its own to interpret the officer's identical words in two different ways. According to the majority, Decker's first use of the phrase "good chance" meant that he had a reasonable suspicion that defendant was driving under the influence of intoxicants; his second use of the same phrase meant that he had a subjective belief that it was more likely than not that defendant was driving under the influence of intoxicants. It reaches that conclusion despite Decker's own testimony, which demonstrates that Decker himself never considered whether he had probable cause to conduct the

search: he testified that defendant "may or may not have been drunk," that he "wanted to check him out."

Because Decker believed that he had a reasonable suspicion that defendant was driving under the influence of intoxicants, he expanded the scope of the traffic stop to investigate that possibility. He had the authority to do that. *State v. Aguilar*, 139 Or App 175, 181, 912 P2d 379, *rev den* 323 Or 265 (1996). However, before he could conduct a search as a part of that investigation, he *actually* had to believe that it was more likely than not that defendant was driving under the influence of intoxicants. Because Decker's testimony indicates that he never even considered whether he had the authority to conduct the search, it is impossible to conclude that he *actually* had the requisite belief until after defendant had refused to perform the field sobriety tests.[1] Without that subjective belief, the probable cause exception to the warrant requirement cannot provide authority for the search. Thus, the search was illegal. The majority errs in concluding otherwise.

Even if the record did not compel the conclusion that Decker lacked subjective probable cause to conduct a search by opening the pickup door, the majority still errs by not remanding the case to the trial court to make findings on that issue. Because the trial court did not consider whether Decker had the requisite belief, we cannot assume that it found that he did. *See Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). It is for the trial court to address that issue in the first instance.

Assuming that the search was unlawful, defendant argues that all of the evidence obtained as a result of it should have been suppressed. He contends that that evidence encompasses testimony about

"defendant's uncooperative behavior, his refusal to take the field sobriety tests, his physical altercation with Officer Decker, his continued belligerent behavior, [and] his 'refusal' to take the breath test."

---

[1] It is not surprising that Decker did not consider whether he had probable cause to conduct a search, because there is no reason to believe that Decker thought that opening the door constituted one. Consequently, Decker did not do what *Owens* required him to do, which was to decide that he had probable cause before he conducted the search. *Owens*, 302 Or at 204.

The state argues that all of that evidence was admissible under the inevitable discovery rule. The inevitable discovery rule is codified at ORS 133.683, which provides:

> "If a search or seizure is carried out in such a manner that things seized in the course of the search would be subject to suppression, and if as a result of such search or seizure other evidence is discovered subsequently and offered against a defendant, such evidence shall be subject to a motion to suppress unless the prosecution establishes by a preponderance of the evidence that such evidence would have been discovered by law enforcement authorities irrespective of such search or seizure, and the court finds that exclusion of such evidence is not necessary to deter violations of ORS 133.525 to 133.703."

The state argues that all of the evidence that was discovered after Decker opened the door would have been inevitably discovered, because the

> "officer did not see anything different or additional when he opened the door. As a result of opening the door, he just had a closer, better, longer view of defendant that made him more *certain* that defendant was under the influence. * * * Trooper Decker testified that he would not let defendant drive away and that he planned to conduct an investigation. All investigations for DUII include the request for the performance of field sobriety tests. Even if Trooper Decker had not opened defendant's door, he would have continued his investigation, which would include a closer, longer observation of defendant and field sobriety tests. After defendant refused the field sobriety tests, the officer was 'certain' that he was under the influence and arrested him. The officer still would have offered defendant the Intoxilizer test, which is standard in DUII investigations. The opening of the car door revealed nothing that the officer would not have otherwise observed in his continuing investigation of defendant for driving under the influence."

(Emphasis in original; footnote omitted.)

The state offers one possible interpretation of the facts in the record. However, the record also supports a conclusion that the information that Decker got from opening the door affected his decision to ask defendant to perform field sobriety tests and his subsequent conclusion that he was

"certain" that defendant was driving under the influence of intoxicants.[2] Because the trial court did not make findings on those issues,[3] I would remand the case to the trial court to determine whether Decker would inevitably have asked defendant to perform field sobriety tests and would inevitably have arrested defendant for driving under the influence of intoxicants had Decker not opened the door to the pickup.[4] Therefore, I respectfully dissent.

---

[2] During cross-examination, Decker testified:

"Q: What happened from before you opened the door to after you opened the door to make you 'certain' that [defendant] was under the influence of intoxicants?

"A: Well, I got a better view of him and could smell the liquor better. He continued to have this stubborn intoxicated attitude and I just observed him for a little while longer—

"Q: From a closer vantage?

"A: That and he refused to do any sobriety tests."

From this exchange, the court could conclude that Decker's better view of defendant and the stronger odor of alcohol played a significant role in Decker's decision to ask defendant to perform the field sobriety tests and his certainty that defendant was driving under the influence of intoxicants, which led to his decision to arrest defendant. Other than the field sobriety tests, all of the evidence that defendant sought to suppress involved events that occurred after defendant's arrest.

[3] Generally, when the trial court fails to make factual findings on a relevant point "and there is evidence from which such facts could be decided in more than one way, we will presume that the facts were decided in a manner consistent with the ultimate conclusion * * * made by the trial court or jury." *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968). In this case, however, the court's ultimate conclusion, that Decker had the authority to open the door, is not relevant to whether the disputed evidence would inevitably have been discovered.

[4] Defendant did not challenge as an illegal search Decker's request that defendant consent to perform field sobriety tests. *See State v. Nagel*, 320 Or 24, 31, 880 P2d 451 (1994) (probable cause necessary in order to require suspect to perform field sobriety tests). Nor did he challenge the admissibility of his refusal to perform those tests on the ground that that evidence violated his right against self-incrimination. *See State v. Fish*, 321 Or 48, 63, 893 P2d 1023 (1995).