Argued and submitted October 21, 1997, affirmed March 11, 1998

# STATE OF OREGON,
*Respondent,*

*v.*

# JACK STANLEY,
*Appellant.*

## (Z339088; CA A94120)

955 P2d 764

John Henry Hingson III argued the cause and filed the brief for appellant.

Jonathan H. Fussner, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Before De Muniz, Presiding Judge, and Deits, Chief Judge,* and Haselton, Judge.

HASELTON, J.

---

* Deits, C. J., *vice* Richardson, S. J.

## HASELTON, J.

Defendant appeals his conviction for driving under the influence of intoxicants (DUII). *See* ORS 813.010. He assigns error to the trial court's denial of his motion to suppress evidence. We affirm.

On December 28, 1995, Portland Police Officers Roberts and Pippen received a radio call regarding a motorist slumped over in a vehicle at 148th Avenue and Halsey Street. Shortly thereafter, the officers arrived at the scene, where they saw a pickup truck, which was stopped straddling two traffic lanes, with the engine running. The pickup's doors were locked, and its windows were closed. Inside was defendant, sitting in the driver's seat, with his eyes closed, his hands on the steering wheel, and his head tilted forward.

After observing defendant for a few seconds, both officers began to yell and to pound on the windows in an effort to rouse him. Roberts shined his flashlight through a window onto defendant's face. When defendant did not respond after about a minute of pounding and yelling, Pippen began to violently rock the pickup back and forth. At that point, defendant lifted his head and opened his eyes, but he looked forward and not at the officers. He revved the pickup's engine, and the officers yelled at him to shut the engine off. Defendant did not comply but, instead, put the pickup into gear. The pickup lurched forward, then stalled, and the engine died. All the while, defendant looked straight ahead, apparently oblivious to the officers' presence.

Pippen resumed pounding on the window and telling defendant to open the door. Defendant finally looked over at the officers and rolled his window down part way. Pippen reached into the pickup and unlocked the door, and Roberts opened the door.[1] Upon the door being opened, defendant said to Roberts, "Hop in, man." At the same time, Roberts observed that defendant's eyes were watery and bloodshot.

---

[1] Defendant does not contend on appeal that the officers' conduct in that regard effected an unlawful search or seizure. *See State v. Hendricks*, 151 Or App 271, 277, 948 P2d 740 (1997) (officer's conduct in inserting his head into the interior of a pickup was a "search"); *State v. Wetzell*, 148 Or App 122, 126, 939 P2d 106, *rev den* 325 Or 621 (1997) (officer's conduct in opening the door of a pickup was a "search").

What then transpired is the subject of some dispute—and, indeed, is the subject of defendant's first argument on appeal. On direct examination during the suppression hearing, Roberts testified that he said to defendant, "Can you step out of the vehicle for us?" On cross-examination, Roberts testified as follows:

"Q. [By defense counsel]: Would you tell me the exact words that you said to Mr. Stanley when you had him get out of his truck?

"A. I think after he said, 'Hop in, man,' I think I said back to him—I think I said, 'Hop out, man,' I think that was my reply.

"Q. 'Hop out, man?'

"A. Yeah.

"Q. He acquiesced and agreed to do that?

"A. Yeah —"

The trial court, in denying suppression, ultimately rendered a finding that "Officer Roberts asked defendant to get out."

In all events, defendant immediately "rolled out of" the pickup, keeping his back to the pickup, and appeared unable to maintain his balance without leaning against the pickup. At that point, Roberts, although not "exactly sure," was "beginning to think that we may have an intoxicated driver." Roberts then asked defendant if he had had anything to drink, and defendant replied, "Four beers." As he spoke with defendant, Roberts detected a "moderate odor of alcoholic beverage" on defendant's breath. Roberts then proceeded to place defendant under arrest without specifying the charge. Thereafter, defendant refused to perform field sobriety tests or to take an Intoxilyzer. Ultimately, defendant was charged with DUII.

Defendant moved to suppress the officers' observations and his own statements on a variety of grounds, two of which are reiterated on appeal.[2] The trial court denied that motion, and defendant was convicted of DUII.

---

[2] Defendant also unsuccessfully moved to "exclude" his refusal to take field sobriety tests and the Intoxilyzer. He does not challenge those rulings on appeal.

On appeal, defendant asserts that the trial court's denial of his suppression motion was erroneous in two respects. First, defendant asserts that the court should have suppressed all evidence obtained after he got out of the pickup because his exit from the pickup was compelled, not consensual, and the officers lacked probable cause to effect a search or seizure at that time. Second, defendant argues that the trial court should have suppressed all evidence obtained after his arrest, because the record does not support a conclusion that Roberts had subjective probable cause for DUII at the time he arrested defendant.

■ Defendant's first argument, as briefed, reads in its entirety as follows:

"When Officer Roberts instructed the defendant to 'Hop out, man,' the officer used the 'language of a command.' *State v. Lowe*, 144 Or App 313, 318, [926 P2d 332] (1996). When the defendant got out of the truck he was merely acquiescing in the officer's authority. 'Mere acquiescence in an officer's lawful authority does not constitute consent.' 144 Or App at 317."

Thus, defendant's sole argument was that Roberts said, "Hop out, man," and that that language cannot be squared with consent.

The difficulty with that argument is that it ignores the trial court's contrary factual finding that "Roberts *asked* defendant to get out" (emphasis supplied) and other testimony by Roberts that fully supported such a characterization: "I said, 'Can you step out of the vehicle for us.'" Defendant, in his brief, did not purport to challenge the trial court's finding, much less to explain why Roberts' testimony on direct examination was inadequate to support that finding. *Cf., e.g., State v. Larson*, 141 Or App 186, 198-99, 917 P2d 519, *rev den* 324 Or 229 (1996) (affirming trial court's determination that, where officer asked the defendant, "Would you please open the door [of the van]?" the defendant's consent was voluntary).

At oral argument, defendant attempted to expand his position dramatically, by arguing, for the first time, that the trial court's findings were inadequate under *State v.*

*Warner*, 284 Or 147, 585 P2d 681 (1978). We decline to consider that argument. *See* ORAP 5.45(2). The only reference to *Warner* in defendant's brief is as general authority for a standard of review, without any reference to the trial court's findings, much less any argument as to how or why those findings may have been deficient. Given that posture, we will not consider defendant's belated argument. *See generally Ailes v. Portland Meadows, Inc.*, 312 Or 376, 380-81, 823 P2d 956 (1991) (where appellant made waiver argument for first time in reply brief, that argument was not properly raised on appeal).

■ Defendant next contends that the trial court should have suppressed all evidence obtained after defendant's arrest because Roberts lacked subjective probable cause for the arrest. Defendant asserts, in particular, that, because Roberts did not specifically state that he had arrested defendant for DUII, there is no evidence from which the trial court could determine that, at the time he made the arrest, Roberts did, in fact, believe that there was probable cause that defendant had committed DUII. *See generally State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986) ("An officer must subjectively believe that a crime has been committed and thus that a person or thing is subject to seizure, and this belief must be objectively reasonable in the circumstances.").[3]

The state responds that the trial court properly could have inferred from Roberts' actions and surrounding circumstances that, at the time he arrested defendant, Roberts subjectively believed that it was more likely than not that defendant had committed DUII. The state points to a variety of circumstances supporting that inference, including: (1) Roberts noted that defendant's eyes were watery and bloodshot; (2) as soon as defendant got out of the pickup, Roberts asked defendant if he had been drinking; (3) Roberts offered defendant the opportunity to take both field sobriety tests and an Intoxilyzer; and (4) there was no other charge for which Roberts could have arrested defendant—*i.e.*, although defendant may have failed to obey a traffic signal or obstructed traffic, he would not have been subject to arrest

---

[3] Defendant does not dispute that objective probable cause existed for DUII.

for those infractions. Conversely, none of Roberts' contemporaneous actions or statements expressly disavowed or contradicted a subjective belief that defendant had committed DUII.

■    We agree with the state. When an inference of subjective probable cause can reasonably be drawn from the evidence and no evidence provides a contrary explanation of the officer's conduct, we will affirm a trial court's conclusion that subjective probable cause existed. *See State v. Belt*, 325 Or 6, 11-12, 932 P2d 1177 (1997); *State v. Wetzell*, 148 Or App 122, 126, 939 P2d 106, *rev den* 325 Or 621 (1997); *State v. Chambers*, 147 Or App 626, 629-30, 938 P2d 793 (1997).

In *Belt*, the court considered whether the trial court could have inferred that, at the time the officer stopped the defendant, he had subjective reasonable suspicion that the defendant had engaged in solicitation:

> "[The] factual circumstances—a dispatch to investigate a solicitation complaint and a report from four women that defendant repeatedly had accosted them in a manner that may suggest a desire to exchange money for sex—are sufficient to permit the inference that the officer suspected that defendant had committed a crime. The officer's conduct after complainants so informed him demonstrates a choice to approach and question defendant about the situation. When, as here, no evidence supports a contrary explanation of that conduct, the conduct supports the inference that the stopping officer subjectively believed what the statute requires." 325 Or at 11-12 (footnote omitted).

The court expressly rejected the defendant's argument that "if no *direct* evidence establishes that an officer 'holds a belief' that a crime has been committed, the trier of fact *cannot* infer that belief from other facts." *Id.* at 11 (emphasis in original). *See also Chambers*, 147 Or App at 629-30 (officer testified that he thought that the defendant "may be under the influence of something"; circumstances supported trial court's inference of subjective probable cause); *Wetzell*, 148 Or App at 125-26 (same result where officer testified that there was "a good chance that defendant was DUII": "[I]n some cases the officer's belief that a crime has been committed by the defendant is evident from the circumstances, and there is

more than one way to express that it is more likely than not that a crime has been committed.").

The same analysis controls here. The record, including the circumstances the state particularly identifies, supports an inference of subjective probable cause. Roberts' conduct and questions from the time defendant left the pickup until the arrest are consistent with a belief that defendant had committed DUII. *See Belt*, 325 Or at 11-12 (officer's conduct in pursuing the investigation supported an inference that the officer held a particular subjective state of mind). Moreover, as noted, none of Roberts' contemporaneous conduct or statements contradicted such a belief. The trial court did not err in denying the motion to suppress.

Affirmed.