Argued and submitted July 29, reversed and remanded September 30, 1998, petition for review denied January 12, 1999 (328 Or 247)

STATE OF OREGON,
*Appellant,*

*v.*

ABRAHAM SMALLEY,
*Respondent.*

(96-1430; CA A97317 (Control))

STATE OF OREGON,
*Appellant,*

*v.*

MARIA TIERRA YAWS,
*Respondent.*

(96-1429; CA A97339)
(Cases Consolidated)

965 P2d 419

Janet A. Klapstein, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

David C. Degner, Deputy Public Defender, argued the cause for respondent. With him on the brief was Diane L. Alessi, Interim Public Defender.

Before De Muniz, Presiding Judge, and Haselton and Wollheim, Judges.

HASELTON, J.

## HASELTON, J.

The state appeals, ORS 138.060(3), from orders suppressing evidence in two related prosecutions for possession of controlled substances, delivery of controlled substances, and, in one case, driving under the influence of intoxicants (DUII). The trial court concluded that the underlying arrest for DUII was not supported by objective probable cause. We disagree and reverse.

The material facts, as found by the trial court, are undisputed. On the evening of November 3, 1996, Clatsop County Deputy Sheriff Bergin was parked in an unmarked patrol car, with his headlights on, on the side of Crab Broiler Road just off Highway 101 near Seaside. Bergin saw a car, driven by defendant Smalley, leave Highway 101 and pull onto Crab Broiler Road. Defendant Yaws, who owned the car, was in the front passenger seat. The car slowed to a stop behind Bergin's patrol car, with its headlights shining into the patrol car, causing Bergin to feel uncomfortable. Although Bergin gestured with his arm for the car to drive past, it did not move. When Bergin turned a spotlight onto the car and flashed it twice, the car still did not move.

Bergin then made a U-turn and pulled up behind defendants' car. He turned on the patrol car's "wig-wag" lights—white lights on the front grill that flash and have a strobe effect—stepped out of his car, and walked toward defendants' car. As he did so, defendants drove away, making a turn onto Highway 101. Defendant Smalley drove through the stop sign at the intersection of Crab Broiler Road and Highway 101 and failed to signal when he turned onto the highway.

Bergin pursued defendants and, some distance down the highway, made a traffic stop for disobeying the stop sign and failing to signal. When he approached defendants, Bergin detected a slight odor of burnt marijuana coming from inside the car. At Bergin's request, Smalley produced his driver's license and other identification and, in doing so, did not fumble. However, Bergin noticed that Smalley's eyes were "red" and "very bloodshot," his eyelids were droopy, and his pupils were "extremely dilated"—so much so as to cover

nearly the entire iris. Bergin returned to his patrol car, contacted the dispatcher, and learned that Smalley was wanted on two counts of possession of a controlled substance and that his driving privileges had been suspended.

Bergin then arrested Smalley on the outstanding warrants and asked him to submit to field sobriety tests. Smalley consented. Bergin performed the horizontal gaze nystagmus (HGN) test and a modified Romberg test. On the HGN test, Smalley displayed four of the six "points," or indicators, of possible intoxication. However, Smalley had a "lack of smooth pursuit,"[1] which Bergin later testified at the suppression hearing is "usually" inconsistent with certain types of intoxication:

> "[I]n either methamphetamine use or stimulant use, I should say, or marijuana use, you do not usually have lack of smooth pursuit. You usually have smooth pursuit. Now that's—that's not always consistent, but more than not, you would have smooth pursuit with that type of—either one of those drug uses * * *."

On the modified Romberg test, Smalley "stood pretty still" but had a "slight sway." Bergin did not observe a red nose, slurred speech, walking problems, or dexterity problems. After completing the field sobriety tests, Bergin believed that Smalley had been driving under the influence of marijuana or a stimulant or both and arrested him for DUII.

Bergin then asked Smalley for consent to search the car, and Smalley declined, saying that Yaws owned the car. Yaws also refused to consent, telling Bergin to get a warrant. Bergin then conducted a warrantless search for evidence of DUII. Inside the car, Bergin found a metal tin, which contained a pipe, a razor blade, a used baggie with a trace of yellow powder, and a small amount of marijuana. In the trunk, Bergin found a duffle bag, which contained three large bags of marijuana and a few bags of powder that tested positive for methamphetamine.

---

[1] At the suppression hearing, Bergin explained that "lack of smooth pursuit" means "that the pupil slightly jerks when following the stimulus, it gets a bouncing."

The trial court granted defendants' motion to suppress, concluding:

> "Since the stop was based on ORS 810.410(3)(b), the DUII investigation must be based on specific facts that justify an expansion of the inquiry. *See State v. Dominguez-Martinez*, 321 Or 206[, 895 P2d 306] (1995). Assuming for the sake of argument that a slight odor of marijuana, bloodshot eyes, droopy eyelids, and dilated pupils are sufficient to expand the scope of inquiry and request field sobriety tests, they are not sufficient to support an arrest for driving under the influence of controlled substances.
>
> "* * * * *
>
> "Prior to arresting the defendant for DUII, Sgt. Bergin administered two field sobriety tests: the Horizontal Gaze Nystagmus test and the modified Romberg. Although he often finds smooth pursuit in persons under the influence of marijuana or methamphetamine, Mr. Smalley had a lack of smooth pursuit. Mr. Smalley performed the modified Romberg pretty well, although he had a slight sway. The only symptoms he displayed were the bloodshot eyes, droopy eyelids, dilated pupils, and eyelid tremors. None of these support Sgt. Bergin's conclusion that Mr. Smalley's mental or physical faculties were adversely affected."

On appeal, the state's argument is straight-forward: The trial court erred in concluding that the undisputed facts do not establish objective probable cause that Smalley was driving under the influence of intoxicants. The state argues, particularly, that, given the totality of the circumstances, the trial court's apparent emphasis on one aspect of the field sobriety tests—Smalley's "lack of smooth pursuit" on the HGN test—was erroneously disproportionate:

> "The court's conclusion appears to have been driven in part by the fact that on **one** of the four positive indicators of intoxication from the HGN tests, the officer testified that defendant's eyes did **not** have smooth pursuit. * * * Notwithstanding the officer's express statement that the test result was not preclusive of drug use, and notwithstanding the officer's affirmative reliance on other positive indicators, such as Smalley's dilated pupils, eyelid tremors, and his nystagmus at point of maximum deviation, the court treated the factor as dispositive. Further, the court ignored that lack of smooth pursuit is indicative of **other** forms of

intoxicants, such as alcoholic beverages." (Emphasis in original.)

We agree that the trial court erred.[2] We have never, of course, held that a suspect's success on any component of the field sobriety tests by itself precludes a determination of objective probable cause. Rather, that assessment must be based on the totality of the circumstances.

Even assuming that Smalley's "lack of smooth pursuit" somehow contradicted marijuana or stimulant use, we conclude that the following circumstances establish objective probable cause that Smalley was driving under the influence of intoxicants: (1) Smalley's apparent obliviousness, or nonresponsiveness, to surrounding circumstances, including being waved around by Bergin, the flashing spotlight, and the "wig-wag" lights; (2) Smalley's conduct, including driving off as Bergin approached the car on foot, disobeying the stop sign, and making an unsignaled turn; (3) the smell of burnt marijuana emanating from the car; and (4) Smalley's bloodshot eyes, droopy eyelids, and hugely dilated pupils.

Those factors sufficiently established probable cause, not only that Smalley had taken an intoxicant, but also that his mental or physical faculties were adversely affected by the use of the intoxicants "to some perceptible degree." *State v. Robinson,* 235 Or 524, 532, 385 P2d 754 (1963), quoting *State v. Noble,* 119 Or 674, 250 P 833 (1926). *See, e.g., State v. Wetzell,* 148 Or App 122, 124, 939 P2d 106, *rev den* 325 Or 621 (1997) (speeding, crossing fog line, strong odor of alcohol emanating from vehicle, "very bloodshot eyes," and "glazed" look established objective probable cause for DUII arrest); *State v. Kimsey,* 147 Or App 456, 460, 936 P2d 1030 (1997) (failure to obey stop sign, bloodshot and watery eyes, odor of alcohol on the defendant's breath, impaired balance, and the defendant's "arrogant and belligerent" attitude established objective probable cause for DUII arrest).

Reversed and remanded.

---

[2] Defendants do not dispute that, if the DUII arrest was valid, the ensuing search was a valid search incident to arrest.