Argued and submitted November 28, 2001, affirmed January 9, 2002

## STATE OF OREGON,
*Respondent,*

*v.*

## ROBERT DONALD GETZELMAN,
*Appellant.*

## 99CR0568FA; A108250

39 P3d 195

Monica L. Finch, Deputy Public Defender, argued the cause for appellant. With her on the brief was David E. Groom, State Public Defender.

Kathryn T. Garrett, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Brewer, Judge.

BREWER, J.

**BREWER, J.**

Defendant appeals from his convictions on two counts of unlawful manufacture of a controlled substance, ORS 475.992(1), and one count of unlawful possession of a controlled substance. ORS 475.992(4).[1] Defendant challenges the trial court's denial of his motion to suppress evidence obtained from a warrantless search of his backpack on the ground that the search was authorized by the automobile exception to the warrant requirement of Article I, section 9, of the Oregon Constitution. Defendant contends that the automobile exception was inapplicable because (1) the searching officers lacked probable cause to believe that the backpack contained evidence of a crime, and (2) the "constructive impoundment" of defendant's vehicle extinguished any justification for a warrantless search. We affirm.

The following undisputed evidence was adduced at a pretrial hearing on defendant's motion to suppress. On January 12, 1999, Officer Dahl saw defendant riding as a passenger in a car. Dahl knew that Detective Koberstein wanted to talk to defendant about a criminal investigation. Dahl recently had arrested defendant for possession of methamphetamine, and he also believed that defendant was running a methamphetamine lab somewhere in the county. Dahl called Koberstein on the radio and confirmed that she wanted to speak to defendant. Dahl followed the car until it stopped and parked in front of a store. Dahl initially spoke with the driver of the car, Wanda Johnson. The car belonged to Johnson's father. Dahl then informed defendant that Koberstein was en route to speak with him about "some charges." Dahl asked Johnson for consent to search the car, and Johnson gave consent. Koberstein arrived and spoke to defendant while he was standing outside the car. When Dahl began his search, defendant nervously approached and asked Dahl what he was doing. Dahl told defendant that Johnson had given him consent to search the car and that defendant needed to go talk to Koberstein. After Koberstein finished

---

[1] Defendant does not appeal from two additional convictions for manufacture of a controlled substance and two further convictions for possession of a controlled substance.

talking to defendant, defendant joined Johnson inside the store.

While searching the car, Dahl found a library book on "chemicals" in the front passenger floor area where defendant had been sitting. When he opened the trunk of the car, Dahl saw two bottles of iodine, muriatic acid, plastic tubing and fittings, a glass tube, and a bottle containing a blue solution that appeared to be in the process of chemical separation. Dahl also found a backpack among the paraphernalia. Dahl had taken extensive drug identification training, had written several drug-related search warrant affidavits, and had investigated approximately 100 methamphetamine cases. From his training and experience, Dahl believed that the paraphernalia in the trunk constituted a methamphetamine laboratory. Because he was concerned about the hazardous nature of methamphetamine production, Dahl stopped searching and called in a narcotics team to finish the search. Dahl and Koberstein then entered the store, located defendant and Johnson, brought them back outside, and arrested them. Defendant consented to a search of the fanny pack he was wearing. Inside the fanny pack the officers found a "clear bindle" that appeared to contain a small amount of a controlled substance.

When Dahl found the backpack, he did not know to whom it belonged. Defendant did not consent to the search of the backpack, and he did not give Johnson "authority to give permission to let anyone get to the bags." When the narcotics team arrived, one of the officers opened the backpack. Inside the backpack the officers found records with "names and dollar amounts," three syringes, a cassette case with numerous bindles, two bindles with white powder, and various other items associated with the manufacture of methamphetamine. The officers field-tested a portion of the substances and found that they tested positive for methamphetamine. After he was arrested, defendant told the officers that the backpack and its contents were his.

At the conclusion of the suppression hearing, the trial court found that Johnson gave Dahl unrestricted consent to search the car and that "[t]here [was] no contradiction of [Dahl's] testimony that he saw items in the trunk of the car

that were items that he associated with the manufacture of methamphetamine that were open to view." The court concluded that the items visible in the trunk gave rise to probable cause to search the backpack for similar evidence of unlawful manufacture of a controlled substance. The court also concluded that the search of the backpack was justified under the automobile exception, because the vehicle was mobile at the time of the search. Accordingly, the court denied defendant's motion to suppress.

Defendant was convicted after a jury trial in which the items found in the backpack were admitted in evidence. On appeal, defendant does not challenge the search of the vehicle, nor does he challenge his arrest or the consensual search of his fanny pack. Instead, defendant focuses exclusively on the search of his backpack, asserting that the trial court erred in concluding that the search was justified under the automobile exception.

■ The automobile exception provides that, " 'if police have probable cause to believe that a person's automobile, which is mobile when stopped by police, contains contraband or crime evidence,' they may conduct a warrantless search of the vehicle for those items." *State v. Burr*, 136 Or App 140, 145, 901 P2d 873, *rev den* 322 Or 360 (1995) (quoting *State v. Brown*, 301 Or 268, 276, 721 P2d 1357 (1986)). Because the material evidence is not in dispute, we review for errors of law the trial court's conclusions that the search was supported by probable cause and that the car was mobile. *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993); *Burr*, 136 Or App at 145.

■ We begin with defendant's challenge to the trial court's probable cause determination. Opening defendant's backpack was a search. *State v. Maynard*, 149 Or App 293, 297, 942 P2d 851 (1997), *rev den* 327 Or 448 (1998). Probable cause to search requires that (1) an officer must subjectively believe that a crime has been committed and, thus, that a person or thing is subject to seizure, and (2) the belief must be objectively reasonable under the circumstances. *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986). Defendant asserts that none of the investigating officers, including the narcotics officers who searched the backpack, testified that

they believed that the backpack contained evidence of a crime. Defendant notes that the fact that a search occurred cannot, alone, support an inference that the searching officers had subjective probable cause. *See State v. Bickford*, 157 Or App 386, 390 n 1, 970 P2d 234 (1998), *rev den* 329 Or 589 (2000) ("If a trial court could infer subjective probable cause *from* the arrest, we would never need to inquire into subjective probable cause *for* the arrest." (Emphasis in original.)). The state responds that the trial court properly could have inferred from the officers' actions and surrounding circumstances that, when the backpack was searched, the officers subjectively believed that it was more likely than not that additional evidence of manufacture or possession of methamphetamine would be found within. We agree.

■■ It is true that none of the officers explicitly stated that they subjectively believed that the backpack contained contraband. However, searching officers need not recite "magic words" to confirm the existence of subjective probable cause. *State v. Wetzell*, 148 Or App 122, 125-26, 939 P2d 106, *rev den* 325 Or 621 (1997). When an inference of probable cause reasonably can be drawn from the evidence and no evidence provides a contrary explanation of the searching officers' conduct, we will affirm a trial court's conclusion that subjective probable cause existed. *See State v. Belt*, 325 Or 6, 11-12, 932 P2d 1177 (1997); *State v. Stanley*, 153 Or App 16, 22, 955 P2d 764 (1998).

The uncontroverted evidence showed that Dahl had an extensive drug enforcement background and that he believed that defendant was a methamphetamine manufacturer. During the course of the consent search, Dahl located several items in the trunk that he recognized as commonly used in the manufacture of methamphetamine. Those items were located in the same area where the backpack was found. When he found the backpack, Dahl had already located the book on chemicals on the floor in the passenger area where defendant had been sitting, and he had also found contraband in defendant's fanny pack. When Dahl discovered the contraband visible in the trunk of the car, he contacted the narcotics team to continue the search because of his concern about the hazardous nature of methamphetamine production. He then went into the store to arrest defendant and

Johnson. The foregoing facts, taken together, support an inference that Dahl and the other searching officers subjectively believed that other items in the car, including the backpack, contained evidence of a methamphetamine lab. In fact, the evidence permits no other plausible inference. Therefore, the trial court properly determined that the search was supported by subjective probable cause.

■ We turn to the issue of objective probable cause. Defendant argues:

> "From an objective standpoint, the backpack did not suggest that it contained crime evidence. Dahl testified that the backpack was closed and that he could not see inside the pack to determine its contents. Although defendant had previously been searched incident to his arrest, the only thing found on defendant's person was a bindle that 'didn't appear to have much in it.' * * * That evidence would not support probable cause to believe defendant's backpack would contain equipment necessary to a methamphetamine laboratory."

Again, we disagree. Defendant's backpack was found in the trunk of the car among items commonly used to manufacture methamphetamine, and defendant had behaved nervously when Dahl began his search of the car. When Dahl called in the narcotics team to complete the search, he already had found the "chemicals" book in defendant's area of the front seat as well as a bindle apparently containing a controlled substance in the fanny pack defendant was wearing.[2] As a consequence, the searching officers reasonably believed that the backpack contained evidence of one or more crimes, in particular, the manufacture or possession of methamphetamine. *See State v. Bingman*, 162 Or App 615, 620-21, 986 P2d 676 (1999) (holding that, where other evidence established probable cause to believe that the defendant possessed controlled substances, investigating officers had probable cause

---

[2] Defendant does not contend that, because he had no interest in the vehicle, there was insufficient evidence to connect him with the contraband in the trunk. *Cf. State v. Herrin*, 323 Or 188, 194, 915 P2d 953 (1996) (holding that officers lacked objective probable cause to search the defendant's car and belongings where drug paraphernalia was found in possession of passengers with no interest in the vehicle, and there was no reason to believe that either passenger had additional property with her).

to search the defendant's purse for similar evidence); *see also State v. Nevel*, 126 Or App 270, 278, 868 P2d 1338 (1994) (holding that officers had probable cause to search the defendant's van for drugs where, among other facts, the defendant had voluntarily retrieved half a gram of methamphetamine from the vehicle and had acted surreptitiously in doing so); *State v. Cromwell*, 109 Or App 654, 658, 820 P2d 888 (1991) (holding that officers had objective probable cause to search the pocket of a jacket found on the seat of the defendant's truck where the discovery of marijuana in two different locations in the truck, combined with the defendant's possession of marijuana, reasonably led officers to believe that "other caches" would be found elsewhere in the vehicle).

██ Of course, probable cause alone is not sufficient to justify a warrantless search. *State v. Walker*, 173 Or App 46, 51-52, 20 P3d 834 (2001). Defendant's most vigorous challenge is to the trial court's further necessary conclusion that the car was mobile. Defendant acknowledges that the proper focus is on the car's mobility when it was stopped, but he does not address the issue of *when* the car was stopped. Arguably, Dahl's initial encounter with Johnson did not constitute a stop. *See State v. Lane*, 135 Or App 233, 238, 898 P2d 1358, *rev den* 322 Or 360 (1995) (holding that a police officer who approaches a parked car and questions its occupants has not shown sufficient authority to cause a reasonable person to believe that he or she is not free to leave). However, the state does not dispute that at some point the encounter was transformed into a stop. In turn, defendant does not contend that the vehicle was immobile when the stop occurred.[3] Instead, he asserts that, by the time the backpack was searched, the vehicle had been constructively impounded by the police.

In particular, defendant contends that any exigency justifying the automobile exception was extinguished when defendant and Johnson were arrested and the narcotics team secured the car and its contents. At that point, defendant asserts, both car and contents had been seized. *See Owens*,

---

[3] Therefore, cases addressing the mobility of a vehicle when first encountered by police are not germane to our decision in this case. *See, e.g., State v. Kock*, 302 Or 29, 33, 725 P2d 1285 (1986) (holding that the automobile exception does not apply to a vehicle that is parked, immobile, and unoccupied when police encounter it).

302 Or at 207 (holding that a "seizure" occurs when there is a significant interference with a person's possessory or ownership interest in property). According to defendant, seizure is the functional equivalent of impoundment. *See Webster's Third New Int'l Dictionary,* 1136 (unabridged ed 1993) ("impound" means "to seize and hold in the custody of the law"). From that premise, defendant reasons, this court's decision in *State v. Kruchek,* 156 Or App 617, 969 P2d 386 (1998), *aff'd by an equally divided court* 331 Or 664 (2001), compels the conclusion that the vehicle was constructively impounded and, thus, no longer mobile when the officers searched his backpack.

In *Kruchek,* the defendant was convicted of possession of a controlled substance. Initially, though, he was cited for driving uninsured. *Id.* at 619. As a consequence of that citation, the investigating officer testified that he was required by police department policy "to have the auto towed and have it held in the city impound until such time that the driver or the owner can present proof of insurance for that vehicle." *Id.* at 619 n 1. After impounding the vehicle and in anticipation of its being towed, the officer began making an inventory of its contents. *Id.* at 619-20. We held that the automobile exception did not support the warrantless search of an opaque container found during the inventory, because the vehicle already had been impounded by the time the officers opened the container and any exigency created by the vehicle's mobility had been extinguished. *Id.* at 624. We carefully noted that it was the *impoundment* of the vehicle that extinguished its mobility. *Id.* With good reason, we did not hold in *Kruchek* that any police action short of actual impoundment or other confiscation of a stopped vehicle would extinguish its mobility.[4] Such a conclusion would be squarely at odds with controlling case law.

---

[4] We consistently have followed *Kruchek* in the context of inventories of vehicles that are about to be towed to an impound lot. *See, e.g., Walker,* 173 Or App at 52; *State v. English,* 164 Or App 580, 582, 994 P2d 165 (1999), *rev den* 331 Or 244 (2000); *State v. Resler,* 163 Or App 328, 330, 987 P2d 1269 (1999), *rev allowed* 331 Or 674 (2001). In *State v. Bridgeman,* 173 Or App 37, 39, 42, 23 P3d 370 (2001), we also applied *Kruchek* where, before they conducted a challenged vehicle search, police had arranged in accordance with department policy for the return of the vehicle to the rental agency that owned it.

■ The automobile exception does not focus on the mobility of a vehicle at the time it is searched but, rather, on its mobility at the time it was stopped. *Brown*, 301 Or at 276; *State v. Coleman*, 167 Or App 86, 94, 2 P3d 399 (2000); *Burr*, 136 Or App at 145. *Brown*, the case in which the Supreme Court first adopted the automobile exception, demonstrates the controlling principle. In *Brown*, officers stopped the defendant's vehicle to arrest him on outstanding charges. 301 Or at 270. The officers arrested the defendant, handcuffed him, and placed him in a patrol car. *Id.* The officers then conducted a warrantless search of the vehicle. The Supreme Court upheld the search, adopting a *"per se"* exigency rule with respect to the mobility requirement. The court explained:

> "Exigencies should not be determined on a case-by-case basis. Police need clear guidelines by which they can gauge and regulate their conduct rather than trying to follow a complex set of rules dependent upon particular facts regarding the time, location and manner of highway stops. Accordingly, we join the federal courts and many other state courts, and hold that probable cause to believe that a lawfully stopped automobile which was mobile at the time of the stop contains contraband or crime evidence justifies an immediate warrantless search of the entire automobile for the object of the search, despite the absence of any additional exigent circumstances." *Id.* at 277 (footnote omitted).

*State v. Kosta*, 304 Or 549, 748 P2d 72 (1987), also illustrates the point. In *Kosta*, police stopped the defendant's vehicle, arrested him, took his car keys, and opened the vehicle's locked truck. Twenty minutes later, officers removed various contents of the trunk. The Supreme Court held that the warrantless search was justified under the automobile exception. *Id.* at 555-56. With respect to the mobility requirement, the court said that "it does not matter that defendant was physically unable to move the automobile after the stop: All the trial court was required to find (and did find) was that the car was mobile at the time it was stopped by the police." *Id.* at 555 (citation omitted).

To reconcile *Kruchek* with *Brown* and its progeny requires an appreciation for the distinction between a vehicle that is *stopped* and one that has been *impounded*. Whatever

various dictionary definitions of impoundment may specify, a *constructive* impoundment in the sense defendant describes cannot suffice to extinguish the automobile exception. The facts on which defendant relies to extinguish the exception— his and Johnson's arrests and a search by narcotics officers— are qualitatively no more compelling than those in *Brown* and *Kosta*. In those cases—as here—when the search was conducted, the defendants were under arrest and unable to move the vehicle or abscond with its contents. The additional fact reported here that the searching officers were specialized drug enforcement officers speaks only to the danger of handling the components of a drug laboratory. There is no evidence in the record that the specialized search was part of an impoundment procedure.

In the end, *Kruchek* is reconcilable with *Brown* and *Kosta* based on the premise that a vehicle that was mobile when stopped is no longer merely *stopped* once impoundment has occurred in accordance with established police procedures. Viewed in that light, *Kruchek* does not offend the aim of clarity underlying the *per se* nature of the automobile exception. By contrast, the rule of *constructive* impoundment advocated by defendant would return police to the complex task of legal fact-matching under dynamic field conditions that the court in *Brown* sought to avoid. Further, defendant's theory cannot be reconciled with results in *Brown* and *Kosta* that were based on circumstances comparable to those found here. Unlike in *Kruchek*, there is no evidence that, when the search of defendant's backpack occurred, the car was impounded or that the investigating officers had arranged for it to be towed. Because the stop of Johnson's vehicle had not been converted to an impoundment, the mobility requirement of the automobile exception was satisfied.

In conclusion, the searching officers had probable cause to believe that defendant's backpack contained evidence of a crime, and the vehicle in which it was found was mobile when stopped. Therefore, the search was justified by the automobile exception.

Affirmed.