Submitted November 25, 2008, affirmed February 25, petition for review denied
May 14, 2009 (346 Or 213)

# STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

# ERIK LEE PIERCE,
*Defendant-Appellant.*

## Marion County Circuit Court
05C55379; A135370

203 P3d 290

Peter Gartlan, Chief Defender, and Stephanie Hortsch, Deputy Public Defender, Legal Services Division, Office of Public Defense Services, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Tiffany Keast, Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Ortega, Judge, and Barron, Judge pro tempore.*

BARRON, J. pro tempore.

---

\* Barron, J. pro tempore, *vice* Carson, S. J.

**BARRON, J. pro tempore**

Defendant was convicted of assaulting a public safety officer, ORS 163.208, and resisting arrest, ORS 162.315. He appeals only his conviction for resisting arrest, asserting that the trial court erred in denying his motion for judgment of acquittal, which was based on his contention that, at the time of his resistance, he was not under arrest. Neither the facts nor the law are in dispute, but the application of the law to the facts is. Our review is limited to determining whether, viewing the evidence in the light most favorable to the state, the factfinder could have found that each element of the crime was proved beyond a reasonable doubt. *State v. Hall*, 327 Or 568, 570, 966 P2d 208 (1998). We affirm.

On December 25, 2005, the Keizer Police Department received a call from defendant's uncle, who reported that defendant had attempted to assault defendant's sister and had taken her car keys. The uncle gave a detailed physical description of defendant, the clothing he was wearing, the approximate location of the incident, and the direction in which defendant was walking. He also stated that he believed that defendant intended to take his sister's vehicle and gave the address at which the vehicle was located. A dispatcher for the Keizer Police Department radioed that information to the officers on duty. Officer Zaitz, who was in police uniform, wearing a badge, and driving a marked patrol vehicle, located defendant shortly thereafter walking in the area mentioned in the dispatch. Defendant perfectly matched the description given to Zaitz. Zaitz stopped his vehicle in the parking lot of a business near where defendant was walking so that he could talk to him. When defendant saw Zaitz, he turned around and began walking away from him. Zaitz yelled at defendant to stop and started after him. Defendant is deaf, but neither Zaitz nor the officers subsequently involved in the incident were aware of defendant's hearing impairment until after defendant was in custody.

When Zaitz caught up with defendant, he told him to stop and pointed a Taser at defendant's back. Defendant turned around, looked at the officer, briefly put his hands in the air, and then put his hands back down. Zaitz holstered his Taser and told defendant to get on the ground. He later

testified that he wanted to detain defendant for investigation. Defendant did not obey Zaitz, so Zaitz grabbed defendant by his collar and, when defendant tensed up, Zaitz attempted to take defendant to the ground. Defendant landed on his hands and knees and immediately lunged into the officer, and wrapped his arms around him. The momentum caused Zaitz and defendant to land in the street. At about this time, Officer Goodman arrived. He joined the fray and hit defendant hard with his flashlight on his thigh. Zaitz was able to get out of defendant's grasp and get behind him so that he could handcuff him.

Once Zaitz got behind defendant, he placed his right arm around defendant's neck. He felt a sharp pain in his finger, realized that defendant was biting him, and he was injured. Zaitz decided to increase the level of force used and struck defendant in the face. He and Goodman then both stepped back so a Taser could be used on defendant. By this time, other officers had arrived on the scene. Zaitz and Officer Fletcher used their Tasers on defendant. Zaitz disengaged from the fray because his finger hurt badly and was bleeding. Goodman told defendant to roll over onto his stomach and made a gesture indicating what he wanted defendant to do. Eventually, after Fletcher used the Taser on defendant again, defendant stopped resisting and rolled over onto his stomach so that the officers could handcuff him.[1]

Defendant, through a certified sign language interpreter, gave a statement in which he said he saw Zaitz in the parking lot, knew that he was a police officer, and knew that he was attempting to stop him. He said he lost control because he was angry about what had happened with his sister. He apologized for his conduct with the officers.

At the end of the state's case, defendant moved for a judgment of acquittal as follows:

"[Defense Counsel]: Your Honor, at this time, defense would move for a judgment of acquittal as to count two. I think there's—the state has failed to prove that at the time Officer Zaitz impeded [defendant's] walking he intended to

---

[1] The state charged defendant with resisting the arrest by Zaitz, but not with resisting the arrest of any of the other officers involved.

place him under arrest, which is what the state must show for the resisting arrest. And the resisting arrest is as to Officer Zaitz.

"* * * * *

"So anyway, this (indiscernible) conduct has to be as to Officer Zaitz' attempts to place him under arrest."

The state responded that it had shown that the officer had placed defendant in actual or constructive restraint and that was sufficient to present a jury question as to whether defendant resisted arrest. The court denied defendant's motion stating:

"[The Court]: Well, it goes a little beyond that. Based on the testimony that was before the court, there was a report to the police with regard to a domestic assault and the taking of some car keys for which the officer testified that he found somebody matching exactly the description.

"I will, in the light most favorable to the state, deny the defendant's motion for resisting arrest."

ORS 162.315 provides, in part:

"(1) A person commits the crime of resisting arrest if the person intentionally resists a person known by the person to be a peace officer * * * in making an arrest.

"(2) As used in this section:

"(a) 'Arrest' has the meaning given that term in ORS 133.005 and includes, but is not limited to, the booking process."

An arrest is defined in ORS 133.005(1) as:

"[T]o place a person under actual or constructive restraint or to take a person into custody for the purpose of charging that person with an offense. A 'stop' as authorized under ORS 131.605 to 131.625 is not an arrest."

Defendant argues:

"There is persuasive contextual evidence that the legislature intended to exempt from the meaning of 'arrest' those restraints that are conducted pursuant to a stop, and intended to capture those restraints that are conducted for

the purpose of charging a person with an offense. Accordingly, the resisting arrest statute applies only to those persons who intentionally resist an officer's attempt to place the person under restraint, or into custody, for the purpose of charging that person with an offense. In the present case, Officer Zaitz attempted to stop defendant to investigate a report of a domestic disturbance. At no time did Zaitz attempt to place defendant under arrest."

The state responds:

"The state agrees with defendant's interpretation of ORS 133.005(1) to require that, whether the officer effecting the arrest does so by placing the person under actual or constructive restraint *or* by taking the person into custody, the officer must do so 'for the purpose of charging the person with an offense.'"

(Emphasis in original.)

We agree with defendant and the state that, as used in ORS 133.005(1), the phrase "for the purpose of charging that person with an offense" modifies both the phrase "place a person under actual or constructive restraint" and the phrase "to take a person into custody." *See State v. Bolden*, 104 Or App 356, 359, 801 P2d 863 (1990). It is the application of that statute to the facts of this case that we must resolve.

◼ Defendant argues that, at the time Zaitz approached defendant and stopped him, he did so for the purpose of investigation, "to figure out what the heck was going on," and not for the purpose of charging defendant with an offense; therefore, defendant did not resist arrest when he struggled with Zaitz. In other words, defendant contends that the determination of whether there is an arrest was fixed at the time Zaitz confronted defendant "to figure out what the heck was going on."

In the trial court, the state argued that Zaitz put defendant under actual or constructive restraint when he initially had contact with him and during the struggle with him. The state, in effect, argued that actual or constructive restraint was sufficient in and of itself to constitute an arrest. The state did not respond to defendant's contention that Zaitz did not intend to charge defendant with an offense when he first stopped defendant.

■ In this court, the state concedes that, when a police officer restrains a person or takes a person into custody, it must be "for the purpose of charging that person with an offense" before a person can commit the crime of resisting arrest. ORS 133.005(1). The state contends that it can be inferred that, when defendant bit Zaitz, Zaitz had formed the intent to charge defendant with the offense of assault in the fourth degree or assaulting a public safety officer, and that such an inference was sufficient for a rational factfinder to determine that defendant had committed the crime of resisting arrest.

We conclude that the state has the better argument. In *Bolden*, this court was presented with a case in which the defendant was convicted of resisting arrest because of his conduct at the parking garage and booking area at the Justice Center in Multnomah County after he was arrested. When he was initially arrested, the defendant did not resist in any manner. The court framed the issue presented to it as follows:

> "The single issue presented is whether 'resisting arrest' may include resistance that occurs while an officer is bringing a defendant in for booking, or whether an arrest is such a discrete event that the resistance must occur at the precise moment one is placed 'under arrest.' "

104 Or App at 358.

The court answered its question by explaining:

> "Although the resisting arrest statute does not define the term 'arrest,' the definition provided by ORS chapter 133 is applicable. Commentary, *Oregon Criminal Code of 1971* 105, § 206. ORS 133.005(1) defines arrest as 'plac[ing] a person under actual or constructive restraint or [taking] a person into custody for the purpose of charging that person with an offense.' Thus, an arrest is not necessarily an instantaneous event. Here, [the officer] was clearly engaged in the act of taking defendant into custody in order to charge him with an offense, and the standard arrest procedures had not been completed.

> "The state is correct that the prohibition against resisting arrest is applicable to 'the entire course of events during which an officer effectuates and maintains custody over an

arrestee for purposes of charging the individual with an offense.' The facts plainly demonstrate that defendant was resisting his state of arrest, and that the arrest was still in progress at the time of the resistance."

*Id*. at 359-60 (footnote omitted; first two brackets in original; third brackets added).

 It is true that a defendant does not commit the crime of resisting arrest when his resistance during the time he is in custody is for some purpose other than resisting his custodial status. *See State v. Powell*, 209 Or App 255, 260, 147 P3d 933 (2006) (defendant resisted a blood draw after his arrest). It does not follow, however, that an arrest is a moment frozen in time where, if a defendant does not resist at that moment, he or she is thereafter free to resist his or her custodial status with impunity.

The state, in effect, concedes that the initial contact with defendant would not support a resisting arrest charge because Zaitz was only trying to talk to the defendant to "figure out what the heck was going on." It contends that it can be inferred that when defendant bit Zaitz, Zaitz decided to arrest defendant for an assault, and, because defendant continued to resist Zaitz, defendant then committed the offense of resisting arrest.

Assuming that Zaitz did not have probable cause to arrest defendant and charge him with an offense when he first contacted defendant, we conclude that he did have probable cause to arrest defendant and charge him with an offense after the struggle started. Defendant had bitten Zaitz, causing him to suffer substantial pain and bleeding. At that time, defendant knew that Zaitz was a police officer, as would have any reasonable person. Zaitz was in uniform, wearing a badge, and driving a marked patrol vehicle. Defendant continued to resist Zaitz after he bit him, and Zaitz had to take actions against defendant to stop his resistance. Zaitz did not articulate a subjective belief that he had probable cause to arrest defendant and charge him with an offense at the time he was bitten, but that is not necessary.[2] In *State v.*

---

[2] Similarly, circumstantial evidence can, for the crime of resisting arrest, be the basis for proving the "arrest" element, the definition of which includes the mental state of acting "for the purpose of" charging a defendant with an offense. *See*

*Getzelman*, 178 Or App 591, 596, 39 P3d 195 (2002), we stated:

> "It is true that none of the officers explicitly stated that they subjectively believed that the backpack contained contraband. However, searching officers need not recite 'magic words' to confirm the existence of subjective probable cause. *State v. Wetzell*, 148 Or App 122, 125-26, 939 P2d 106, *rev den*, 325 Or 621 (1997). When an inference of probable cause reasonably can be drawn from the evidence and no evidence provides a contrary explanation of the searching officers' conduct, we will affirm a trial court's conclusion that subjective probable cause existed. *See State v. Belt*, 325 Or 6, 11-12, 932 P2d 1177 (1997); *State v. Stanley*, 153 Or App 16, 22, 955 P2d 764 (1998)."

In *State v. Miller*, 345 Or 176, 186, 191 P3d 651 (2008), the Supreme Court discussed the subjective and objective components of probable cause to arrest:

> "[*State v.*] *Cloman*[, 254 Or 1, 456 P2d 67 (1969),] established that an officer's expressed reason for making an arrest does not control a court's determination of that arrest's legality—so long as the officer *acted on the belief* that there was a legal justification for that action (the subjective component) and the officer's belief was objectively reasonable (the objective component). For the purposes of the subjective component of the probable cause inquiry, it is sufficient if the trial court finds (and there is evidence to support its findings) that the officer reasonably believed that he had lawful authority to act, even if the officer's subjective basis for acting turns out to be incorrect. Of course, in order to prove a valid arrest, the state also must establish, in addition to the officer's subjective belief that he or she had lawful authority to act, that the facts objectively are sufficient to establish probable cause."

(Emphasis in original.)

■　　The Supreme Court made it clear that the subjective belief of an officer means the officer "must reasonably believe that [his] conduct is legally justified, and [he] must have acted on that belief in restraining a defendant's liberty." *Id.* at 188. Clearly, in this case, there is no evidence to contradict

---

*State v. Fitch*, 47 Or App 205, 208, 613 P2d 1108 (1980) (circumstantial evidence used to prove the defendant acted for the purpose of arousing his sexual desire).

the inference that Zaitz believed his conduct was legally justified and that he was acting on that belief when he was attempting to restrain defendant's liberty. And, just as clearly, the evidence demonstrates that Zaitz had probable cause to believe that defendant had committed an assault against him when defendant bit him and that he therefore could be charged with that offense. As such, defendant resisted arrest after he bit Zaitz, and the trial court did not err in denying his motion for judgment of acquittal.

Affirmed.