Argued and submitted May 28, on appeal, part of orders suppressing evidence found during the first search of the backpack reversed; otherwise affirmed; on cross-appeal, affirmed September 10, 2014

STATE OF OREGON,
*Plaintiff-Appellant*
*Cross-Respondent,*

*v.*

ROBERT LEE BENNETT,
*Defendant-Respondent*
*Cross-Appellant.*

STATE OF OREGON,
*Plaintiff-Appellant*
*Cross-Respondent,*

*v.*

DONAVON RAY McCALL,
*Defendant-Respondent*
*Cross-Appellant.*

Marion County Circuit Court
12C41087, 12C41088;
A152824 (Control), A152825

338 P3d 143

Tiffany Keast, Assistant Attorney General, argued the cause for appellant-cross-respondent. With her on the briefs

were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Lindsey K. Detweiler, Deputy Public Defender, argued the cause for respondents-cross-appellants. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

DEVORE, J.

## DEVORE, J.

This criminal case involves two codefendants, Bennett and McCall, and presents an appeal and cross-appeal of a pretrial ruling on their motion to suppress.[1] The state appeals the trial court's pretrial order partially granting defendants' motion to suppress; defendants cross-appeal the partial denial of that motion. At issue is evidence discovered during a search of McCall's car, a search of a backpack found in the car, and a subsequent search of that same backpack. The state contends that the automobile and officer safety exceptions to the warrant requirement allowed officers to search the car and justify both searches of the backpack. On cross-appeal, defendants argue that officers did not have probable cause to search the car or the backpack. We review for legal error, *State v. Warner*, 181 Or App 622, 624, 47 P3d 497, *rev den*, 335 Or 42 (2002). We conclude that the trial court erred in partially granting defendants' motion to suppress, because the automobile exception to the warrant requirement properly applied to the first search of the backpack.

The following facts are undisputed. An informant, or "cooperating defendant" from another case, identified Bennett as the source of her drugs and told officers that Bennett participated in a medical-marijuana grow operation run by his roommate, McCall. The informant suggested that she could get pills from McCall. Officers confirmed that both men held medical marijuana cards and that McCall's address was a registered marijuana grow site. Officer Miller set up a controlled buy of 3.3 grams of marijuana in December 2011, between Bennett and the informant.[2] In January 2012, Miller asked the informant to arrange another transaction for two ounces of marijuana in what would be a buy-bust operation. The police recorded the informant's phone conversation with Bennett as they

---

[1] Bennett is charged with two counts of delivery of marijuana for consideration, ORS 475.860(2), and McCall is charged with one count of delivery of marijuana for consideration, ORS 475.860(2), and one count of delivery of a Schedule II controlled substance, *former* ORS 475.840(1) (2011), *renumbered as* ORS 475.752.

[2] The December controlled-buy operation formed the basis of one count of delivery of marijuana, as to Bennett.

set up the deal. McCall could be heard in the background, directing the meeting time and place at a grocery store. The informant told Miller that there were guns at Bennett and McCall's residence, that McCall always carried a handgun, and that McCall was disabled and used a wheelchair. If McCall accompanied Bennett, the informant believed that McCall would be driving a Cadillac.

On January 20, the police arrived at the grocery store parking lot in unmarked vehicles for the buy-bust operation. An officer noticed a Cadillac moving, as it pulled into the lot. The car had a "handicap" tag on the rear-view mirror. The informant identified Bennett as he got out of the car and walked toward the store's garden center. McCall remained in the driver's seat. After confirming the occupants' identity, the officers initiated their arrests. An officer opened the driver's door, told McCall that he was under arrest, and grabbed McCall's arm. McCall broke the officer's grip and leaned away toward the center of the car. Threatening to use a Taser, officers forcibly removed McCall from the Cadillac, handcuffed him, got him into his wheelchair, and moved him to a place under the store's awning.

Officers conducted searches and found several pieces of evidence following the arrests. Bennett had two ounces of marijuana in his possession. On the front passenger-side floorboard of the car, officers found a small bag of marijuana and a gallon-sized bag containing more than 60 grams of marijuana, as well as a marijuana pipe and a plastic container of marijuana in the glove compartment. A backpack also lay on the front passenger floorboard. An officer opened the backpack and found a loaded handgun, McCall's medical marijuana paperwork, and various additional containers of marijuana.[3] An officer searching McCall's cell phone found text messages related to the sale of Vicodin.

---

[3] The officer testified at the pretrial hearing that he believed there would be evidence of "delivery or marijuana and/or possession of marijuana" in the backpack. The backpack contained a prescription bottle with McCall's name on the label and less than an ounce of marijuana inside, two sandwich baggies containing what police believed to be marijuana, and a second pill bottle containing less than an ounce of marijuana.

Thirty to forty-five minutes later, McCall said that he needed to use a bathroom. He asked for his catheter out of his backpack. The detective assisting McCall did not know that the backpack had been searched. He removed it from the Cadillac and checked it for weapons. He found two prescription pill bottles of Vicodin with McCall's name on the label.[4]

At a pretrial hearing, defendants moved to suppress the evidence obtained in the searches of the car and backpack. They argued, in part, that the police did not have probable cause for an arrest because the informant was unreliable and that no exception to the warrant requirement applied to the search of the car. The state responded that the police had probable cause for both defendants' arrest for the unlawful sale of marijuana and that several warrant exceptions applied to the searches: officer safety, automobile, and search incident to arrest. The trial court denied defendants' motion to suppress evidence found within the Cadillac or glove compartment, determining that the police did not merely rely on unsubstantiated information from an informant. The trial court, however, granted defendants' motion to suppress evidence found in the backpack. As to the first backpack search, the trial court did not believe that any warrant exception applied.[5] As to the second search of the backpack, it suppressed evidence of the Vicodin, reasoning that McCall did not give consent to a search by merely asking for access to his catheter.

On appeal, the state challenges the court's suppression of the evidence found within the backpack, reasserting its arguments before the trial court. The state argues that the second search of the backpack, performed when the detective retrieved McCall's catheter, still falls within the automobile and officer safety exceptions. Defendants respond and cross-appeal, arguing that the automobile exception does not apply because there was not probable cause to believe that the car or the backpack contained evidence of a

---

[4] The Vicodin formed the basis for a charge against McCall.

[5] In part, the trial court reasoned that, "relying on the *Hite* case," the automobile exception did not apply. It appears the trial court relied on *State v. Hite*, 198 Or App 1, 107 P3d 677 (2005), a case that addresses the officer safety exception but does not discuss or apply the automobile exception.

crime.[6] Even if there were probable cause to search the car, defendants assert that the police exceeded the permissible scope of the search by opening the backpack. Defendants also contend that the state's arguments as to the second search of the backpack are unpreserved and that, regardless, no exception permitting that search applies.

Before addressing these issues, we must pause to consider whether we should exercise our statutory discretion to review defendants' cross-appeal. ORS 138.040; *State v. Bellar*, 231 Or App 80, 85, 217 P3d 1094 (2009), *rev den*, 348 Or 291 (2010). Given policy considerations when reviewing an appeal of a pretrial order, our discretion to review a defendant's cross-appeal "should be exercised 'only sparingly.'" *Bellar*, 231 Or App at 85 (quoting *State v. Shaw*, 338 Or 586, 618, 113 P3d 898 (2005)). As we have observed, defendants have the opportunity to appeal adverse rulings upon conviction, whereas intermediate rulings are necessarily moot upon acquittal. Further, the state's pretrial appeal unavoidably "prolongs the pendency of a criminal proceeding" and may delay a defendant's trial. *Id.* at 85-86. Therefore, we will exercise our discretion only as to "those assignments of error that are inextricably linked, either factually or legally, to the state's assignments of error on appeal." *Shaw*, 338 Or at 618-19.

Here, defendants' assignment of error shares the same facts central to the state's appeal, that is, officers' warrantless search of a car and a backpack found within that car during a buy-bust operation. This case stands apart from our decision in *Bellar*—a case in which "the issues [were] framed by different circumstances" and represented "discrete events." 231 Or App at 87-88. In *Bellar*, the trial court's ruling pertained to two different factual circumstances: events occurring at a repair shop and events occurring at the defendant's residence. We concluded that the defendant's assignments of error were not inextricably

---

[6] Defendants do not appear to argue, on cross-appeal, that the officers lacked probable cause to suspect them of unlawful drug-related activity or challenge the trial court's ruling regarding the reliability of the informant. Defendants assert that, "at the time of the search, officers lacked probable cause to believe that the vehicle contained contraband, or evidence of the crime of delivery of marijuana, or that items in the vehicle posed a risk to officer safety."

linked to the state's appeal, because "the factual circumstances and the legal issues that defendant frames are dissimilar to the factual circumstances and the legal issue upon which the state's appeal was predicated." *Id.* at 88. Conversely in this case, the facts and events integral to the appeal and cross-appeal are the same. We cannot say that the factual issues can be easily disentangled, since the parties focus on interdependent searches occurring at the same time and place.

The legal issues are likewise inextricably linked. Defendants challenge the trial court's probable cause determination permitting the search of the car. That determination impacts the trial court's ruling as to suppression of evidence found in the backpack. Stated another way, if no probable cause supported the application of the automobile exception as to the search of the Cadillac, then, as we will note, the automobile exception would not justify the search of the backpack found on the floorboard. *See State v. Smalley*, 233 Or App 263, 267, 225 P3d 844, *rev den*, 348 Or 415 (2010) ("[T]he police may search any area of the vehicle or any container within the vehicle in which they have probable cause to believe that the contraband or crime evidence may be found."). If defendants were to succeed in their assignment of error, the state's legal arguments as to the automobile exception would be rebutted. The legal issue raised on cross-appeal is necessarily reached in addressing the state's appeal.[7] We conclude that defendants' assignment of error is inextricably linked, both factually and legally, to the state's assignments of error. We do not dismiss defendants' cross-appeal as beyond the boundaries of our discretion.

We need only briefly address the automobile exception under Article I, section 9, of the Oregon Constitution in order to reject defendants' contention that the exception did not apply to the circumstances of this case.[8] Under the

---

[7] The argument is raised in defendants' answering brief in response to the state's assertion that the automobile exception applied to the search of the backpack as well as in defendants' cross-appeal challenging the trial court's order partially denying defendants' motion.

[8] Article I, section 9, provides, in part, "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

automobile exception, an officer may conduct a warrantless search of a vehicle provided that (1) it is "mobile" at the time it is encountered by police or other governmental authority and (2) probable cause exists for the search. *State v. Brown*, 301 Or 268, 276, 721 P2d 1357 (1986). It is well established that, under the automobile exception, "the police may search any area of the vehicle or any container within the vehicle in which they have probable cause to believe that the contraband or crime evidence may be found." *Smalley*, 233 Or App at 267. As the parties in this case do not dispute the Cadillac's mobility, we focus our analysis on the probable cause requirement.

Our case law recognizes that, to conduct a warrantless search, police must have "probable cause to believe that a person's automobile * * * contains contraband or crime evidence[.]" *Brown*, 301 Or at 276. Probable cause to search requires both that an officer subjectively believe a crime has been committed and that the belief is objectively reasonable under the circumstances. *State v. Getzelman*, 178 Or App 591, 595, 39 P3d 195, *rev den*, 334 Or 289 (2002) (citing *State v. Owens*, 302 Or 196, 204, 729 P2d 524 (1986)). Subjective belief need not be substantiated by "magic words" in the record but can be supported by reasonable inferences. *See id.* at 596 (citing *State v. Wetzell*, 148 Or App 122, 125-26, 939 P2d 106, *rev den*, 325 Or 621 (1997)). The objective reasonableness of that belief is subject to a "more likely than not" standard that does not require proof beyond a reasonable doubt. ORS 131.005(11); *Wetzell*, 148 Or App at 125. Objective probable cause is a legal, rather than factual, question. *State v. Currin*, 258 Or App 715, 719, 311 P3d 903 (2013).

We cannot agree with defendants that the officers lacked probable cause to believe that the Cadillac contained evidence related to defendants' criminal activity. Defendants suggest that, because Bennett was the actor engaged in the drug transaction and because he had exited the car, there was not probable cause to believe that additional evidence remained in the Cadillac. Yet, the evidence adduced at the hearing established that the officers did have the requisite subjective belief that the car contained evidence of crime. An officer testified that he believed that there was probable

cause that drug-related evidence of crime was contained in the backpack. An inference can be reasonably drawn from the evidence in the record that evidence would be located elsewhere in the Cadillac. Officer Miller testified about his experience conducting drug-related investigations on the Street Crimes Team, the use of informants to help set up controlled buys and buy-bust operations, and the application of that experience in this case. The officers had information—provided directly both by the informant and through recorded telephone conversations between the informant and Bennett—indicating that both defendants were unlawfully delivering drugs. The officers also knew that defendants used the Cadillac for the drugs' transport, had evidence of the December controlled-buy operation during which the informant purchased marijuana from Bennett, and had to forcibly remove McCall from the car. Given those facts, the record reflects that the officers subjectively believed that, at the time of the buy-bust operation, drug evidence would likely be found in the car.

We must also address the objective probable cause requirement. As noted above, there was uncontroverted evidence that Bennett and McCall had participated in unlawful drug transactions and that Miller orchestrated the buy-bust operation based on his training and prior experience with other like crimes. Bennett had marijuana in his possession consistent with the arrangement on that occasion. The Cadillac was implicated in the sale of those drugs, as it was used in connection with criminal activity. It is no great leap to conclude that the officers' belief—that additional drug evidence would be present in the car where McCall was sitting—was objectively reasonable under the circumstances. *See State v. Bingman,* 162 Or App 615, 620-21, 986 P2d 676 (1999) (where evidence established probable cause that the defendant possessed marijuana and officers had probable cause to search her purse). The trial court did not err in denying defendants' motion to suppress evidence discovered in the car. *See State v. Marsing,* 244 Or App 556, 561-64, 260 P3d 739 (2011) (probable cause established in warrant affidavit to search residence, garage, outbuildings and vehicles where the occupants of the residence were dealing drugs).

Similarly, we reject defendants' argument that the officers impermissibly exceeded the scope of the search of the car by opening the backpack upon its discovery. This court has observed that, just as a search should not exceed the scope of a warrant, "a search under the automobile exception is only reasonable within its limits." *State v. Tovar*, 256 Or App 1, 11, 299 P3d 580, *rev den*, 353 Or 868 (2013). We have concluded that the automobile exception does not require an officer to have probable cause to believe that a discrete container holds evidence of crime. *Id.* Rather, the "proper scope is defined by the warrant that the officer *could* have obtained." *Id.* at 14 (emphasis in original). In this case, officers could have requested a warrant to search the Cadillac and all of its contents for marijuana. *See id.* (concluding the defendant's backpack in the defendant's car was within the scope of the search). Such a warrant would have authorized officers to "search any compartment or container reasonably expected to contain the object of the search." *Id.* The backpack would have fallen within the scope of that search, as a container that reasonably could have been expected to contain drug evidence. Therefore, the trial court erred in determining that the automobile exception did not extend to the initial search of the backpack. *See Smalley*, 233 Or App at 267.

The remaining question is whether the trial court erred in determining that the second search of the backpack, 30 to 45 minutes after its initial search, was unjustified. Defendants first contend that the state's argument that the search of the backpack was justified by the officer safety exception to the warrant requirement was unpreserved. "Ordinarily, this court will not consider an issue on appeal unless it was first presented to the trial court." *State v. Whitmore*, 257 Or App 664, 666, 307 P3d 552 (2013) (citing *Kaptur and Kaptur*, 256 Or App 591, 594, 302 P3d 819 (2013)); *see also* ORAP 5.45(1). In this case, the state's written response to defendants' motion to suppress included, within the "officer safety" section of the memorandum, the state's position "that the detectives will articulate a concern for their safety, and the subsequent searches which occurred as a result, should be upheld[.]" That argument was sufficient to alert the trial court of the state's position that

the officer safety exception applied to all searches at issue in defendants' motion, and that argument is preserved for appeal.[9]

On the merits, we conclude that the officer safety exception did not apply to the second search of the backpack. The officer safety exception to the Article I, section 9, warrant requirement provides that an officer may

"take reasonable steps to protect himself or others if, during the course of a lawful encounter with a citizen, the officer develops a reasonable suspicion, based upon specific and articulable facts, that the citizen might pose an immediate threat of serious physical injury to the officer or to others then present."

*State v. Bates*, 304 Or 519, 524, 747 P2d 991 (1987). For example, where an officer reasonably believes that "'a lawfully stopped individual is dangerous and may gain immediate control of a weapon,'" the officer may search the area and containers around the individual that could hold a weapon. *State v. Ehly*, 317 Or 66, 83 n 16, 854 P2d 421 (1993) (quoting 1 Rudstein, Erlinder and Thomas, Criminal Constitutional Law § 2.07(7) (1992)).

The state proposes that the officer safety exception applies to these circumstances because McCall was known to carry a handgun and needed access to his backpack. The state bears the burden of proof to establish that an exception to the warrant requirement applied to the circumstances of a warrantless search. *State v. Davis*, 295 Or 227, 237, 666 P2d 802 (1983). For the officer safety exception to apply, there must be reasonable suspicion that a defendant "poses an immediate threat of serious physical injury to the officer or another person then present." *State v. Steffens*, 250 Or App 742, 754, 282 P3d 888 (2012). At the time McCall asked for his catheter, he was handcuffed in his wheelchair under the store's awning while the backpack remained in the

---

[9] The state argues for the first time on appeal that "[t]he fact that the Vicodin * * * was found in a second search of the backpack that occurred 30 to 45 minutes after it was first searched does not take the second search outside the purview of the automobile exception." *See State v. Wiggins*, 247 Or App 490, 494 n 1, 270 P3d 306 (2011), *rev den*, 352 Or 33 (2012) (declining to impose temporal limitation on search conducted under the automobile exception). That argument was not presented to the trial court and, accordingly, we will not address it.

Cadillac. Because the police controlled the backpack, no reasonable suspicion of an immediate threat was present here. If officer safety was a concern, the backpack could have been withheld while emergency medical services were summoned to provide a catheter, or police could have sought McCall's express and voluntary consent to search the backpack.[10] The officers attending to McCall had no reason to believe that they were in immediate danger by assisting him in accessing his catheter from his backpack. Evidence from this second search of the backpack was properly suppressed.

On appeal, part of orders suppressing evidence found during the first search of the backpack reversed; otherwise affirmed; on cross-appeal, affirmed.

---

[10] The state has not argued that McCall's request for his catheter served as consent for the police to search and inventory the backpack. And, the record does not establish that McCall asked for anything more than the catheter. The consent exception was not developed or presented on appeal.