Argued and submitted October 28, 2014, reversed and remanded
January 7, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DAVID JASSO BAIZ,
*Defendant-Appellant.*

Yamhill County Circuit Court
CR110615; A152801

342 P3d 161

Daniel C. Bennett, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jennifer S. Lloyd, Attorney-in-Charge, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

DEVORE, J.

**DEVORE, J.**

Defendant appeals a judgment of conviction for unlawful delivery of marijuana for consideration, ORS 475.860. Defendant assigns error to the trial court's denial of his motion to suppress evidence, arguing that the search was unlawful under Article I, section 9, of the Oregon Constitution, because the automobile exception did not apply to a warrantless search of his car.[1] We review for legal error. *State v. Ehly,* 317 Or 66, 75, 854 P2d 421 (1993); *State v. Getzelman,* 178 Or App 591, 595, 39 P3d 195, *rev den,* 334 Or 289 (2002). We reverse and remand.

Police responded to a suspicious-person call at a bank. When the officers arrived, they found defendant walking toward his Dodge Neon parked in the parking lot behind the bank. Before defendant reached his car, Officer Fair approached him, attempting to "[make] some conversation with him" and asking "if he was okay, if everything went okay in the bank." Defendant's speech was initially incomprehensible. He admitted that he had smoked methamphetamine earlier in the day and that it would not be safe for him to drive. Defendant consented to a search of his person, but the search did not reveal any evidence other than "a lot of cash." He refused to consent to a search of his car. The officers suggested that defendant walk home and return for his car later. Defendant appeared to do so.

After defendant left, the officers walked around his car and looked through the windows. Fair saw a duffel bag from which a baggie containing marijuana protruded. With a limited view, Fair thought that the baggie contained "maybe less than an ounce." Fair told the bank's manager to call him if defendant returned and attempted to drive. About that time, defendant reappeared at the bank and asked the bank manager to drive the car for him. The manager declined, and defendant appeared to depart again on foot.

Just before the officers left the parking lot, defendant emerged from behind the building accompanied by another man. Fair saw defendant hand his keys to the man.

---

[1] Article I, section 9, provides, in part, "No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure[.]"

Because it appeared that defendant was trying to leave, Fair approached the pair of men, holding out his hand, and procured defendant's keys. Fair asked defendant about the marijuana in his car. Defendant admitted that there was "at least" half of a pound. Fair opened the car door using the keys, looked through the duffel bag, and pulled out four gallon-sized baggies of marijuana. When weighed, the baggies totaled 402 grams.

Officers searched the car and the duffel bag and discovered drug-related evidence. They found a box containing a small methamphetamine pipe, some methamphetamine, two joints, and a small plastic baggie containing methamphetamine residue. They also found bank statements from Oregon and California and other "numerous papers that appeared to be drug-related with phone numbers and amounts of marijuana purchased, and ready for purchase."[2] Defendant was charged with unlawful delivery of marijuana and unlawful possession of methamphetamine.

At a motion to suppress hearing, defendant argued that the automobile exception did not apply to his case and that the evidence in his car should be suppressed. In part, the state responded:

"And I don't * * * think it's necessary to get into the automobile exception, but just for the record, * * * even though the officers did not see this vehicle in motion themselves, they did have information from the bank manager that the defendant was—she saw the defendant in the vehicle parked on the front, * * * she describes that she saw the defendant drive the vehicle away, and then come back to the bank and park in the back parking lot.

"* * * * *

"So, I guess a subset argument that the state is making is the court could find under the automobile exception that there was mobility."[3]

The trial court denied defendant's motion in a letter opinion, ruling that the police had probable cause for a search, that

---

[2] Following the search of defendant's car, defendant consented to a search of his hotel room, approximately two miles away. During that search, officers found a digital scale.

[3] The prosecutor conceded that "the officers did not stop a mobile car, but they did have information about the mobility from the bank manager."

defendant's car was mobile when he returned to the parking lot with the unknown man, that the police had seized defendant's keys, and that, therefore, the search of the car was lawful. The court commented that the car was mobile "all during the encounter, but most assuredly after defendant returned to the area with a designated driver and with the full and clear intent to move the car." Defendant entered a conditional plea, reserving the right to appeal the trial court's suppression ruling.

On appeal, defendant challenges the trial court's ruling, arguing that the automobile exception does not apply to these circumstances, because his car was parked, immobile, and unoccupied at the time of the police encounter. *State v. Kurokawa-Lasciak*, 351 Or 179, 263 P3d 336 (2011). The state responds that, because the car was "constructively mobile" when defendant returned with the intent to drive away, the automobile exception applies to this case.[4] We agree with defendant.

Under the automobile exception to the general warrant requirement, "an officer may conduct a warrantless search of a vehicle provided that (1) it is 'mobile' at the time it is encountered by police or other governmental authority and (2) probable cause exists for the search." *State v. Bennett/McCall*, 265 Or App 448, 455, 338 P3d 143 (2014) (citing *State v. Brown*, 301 Or 268, 276, 721 P2d 1357 (1986)). Because defendant does not contest probable cause, our analysis only concerns the mobility requirement.

The Supreme Court's opinion in *Kurokawa-Lasciak* is dispositive. 351 Or at 179. In that case, the state charged defendant with various drug offenses. The trial court granted his motion to suppress evidence found in his rental van and the state appealed. *Id.* at 181. On review, the court recounted that a casino had begun watching the defendant for potential criminal activity. *Id.* at 181-82. On the morning in question, the defendant left the casino in his van, went to a nearby gas station, and returned to the casino's parking lot about 13 minutes later. *Id.* at 182. The defendant "parked, got out of his van, and began to walk toward the casino.

---

[4] The state makes no argument on appeal that a general exigency exception permitted a warrantless search of defendant's car.

When defendant was approximately 30 feet from his van, an officer * * * drove his patrol car to the place where defendant was walking and stopped him." *Id.* Eventually, an officer conducted a warrantless search of the van. At the trial, the state argued that the search was justified by the automobile exception. On review, however, the court concluded that the automobile exception "does not permit a warrantless search of a defendant's vehicle when the vehicle is parked, immobile, and unoccupied at the time that the police encounter it in connection with a crime." *Id.* at 181. The court emphasized that, when the officer stopped the defendant, he was "approximately 30 feet from his van, which was parked, immobile, and unoccupied, and that, when [an officer] questioned defendant, defendant was no longer near the van." *Id.* at 194. Given those facts, the record did not support a conclusion that the van was "mobile" at the time the officers first encountered it in connection with a crime. *Id.*

The facts in this case are indistinguishable from *Kurokawa-Lasciak*. When the responding officers arrived, defendant's car was parked in a lot behind the bank. The engine was not running, and no one occupied the vehicle. Defendant and his keys were not in the car when the officers arrived. The state conceded at trial that the officers had not seen the car move and that they only had a report from the bank manager that the car had arrived at some time in the past. Given that it was parked, immobile, and unoccupied at the time the officer first encountered it in connection with a crime, the car in this case was not "mobile" as required under the automobile exception. The trial court erred in denying the motion to suppress.

Reversed and remanded.