Argued and submitted May 18, 2000, affirmed March 14, 2001

## STATE OF OREGON,
*Respondent,*

*v.*

## EDWARD J. GILBERTZ,
*Appellant.*

## (D9805833T; CA A106430)

20 P3d 252

John Henry Hingson III argued the cause and filed the brief for appellant.

Jennifer Scott Lloyd, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Haselton, Presiding Judge, and Deits, Chief Judge,* and Wollheim, Judge.

WOLLHEIM, J.

* Deits, C. J., *vice* De Muniz, J., resigned.

## WOLLHEIM, J.

Defendant appeals his conviction, after a stipulated facts trial, of driving under the influence of intoxicants (DUII). ORS 813.010. Defendant argues that the trial court erred when it inferred that the police officer who stopped defendant held a subjective belief that defendant was driving under the influence. We affirm.

In November 1998, Officer Hart saw defendant driving east on Pacific Avenue in Forest Grove at 3:44 a.m. After noticing defendant's car "drift over to the center broken line," Hart followed defendant and observed a similar driving pattern four more times. Hart then turned on his overhead signal lights, and defendant signaled and pulled over to the side of the road. After talking with defendant for a few moments, Hart asked defendant to perform a series of field sobriety tests. Defendant failed each test. Hart then arrested defendant for DUII. Defendant later submitted to a breath test that produced a 0.15 percent blood alcohol content result.

Defendant filed a motion to suppress. At the hearing on the motion, Hart testified to the facts above and stated that, at the time of the stop, he considered defendant's driving to be "erratic." He did not explain the basis for the stop. Hart also testified that, after his initial conversation with defendant following the stop, he suspected that defendant was under the influence. The trial court found that, based on Hart's observation of defendant's "weaving between the fog line and center line at 3:30 in the morning five times," Hart had "a reason for suspicion to stop the defendant for further investigation of driving under the influence." The trial court denied the motion to suppress and subsequently found defendant guilty of DUII.

■■ A police officer is allowed to restrain a person temporarily and make a reasonable inquiry if the officer reasonably suspects that the person has committed a crime. *See* ORS 131.615(1) (stopping of persons) and ORS 131.605(6) (defining "stop"). Pursuant to ORS 131.605(5), " '[r]easonably suspects' means that a peace officer holds a belief that is reasonable under the totality of the circumstances existing at the time and place the peace officer acts as authorized in ORS

131.605 to 131.625." The Supreme Court has concluded that ORS 131.605(5) contains two requirements: a requirement that the stopping officer subjectively believe that the person stopped has committed a crime and a requirement that the officer's subjective belief be objectively reasonable under the totality of the circumstances. *State v. Belt*, 325 Or 6, 11, 932 P2d 1177 (1997). Usually, an officer's subjective belief is presented through direct testimony at trial. On occasions when it is not, a trial court may, if reasonable under the totality of the circumstances, infer that an officer held a subjective belief based upon other evidence submitted at trial. *Id.* at 11-12. At issue here is whether the state presented sufficient evidence for the trial court to infer that Hart held a subjective belief that defendant had committed a crime before Hart stopped defendant.

■    The Supreme Court has held that a trial court's inference of an officer's reasonable suspicion must be based upon "the totality of the circumstances existing at the time and place" of the stop as required by ORS 131.605(5). *Id.* at 13. In *State v. Bickford*, 157 Or App 386, 390, 970 P2d 234 (1998), *rev den* 329 Or 589 (2000), we clarified that the totality of the circumstances "include[s] the objective facts of defendant's conduct, the officer's knowledge at the time, the officer's expertise or experience, and the conduct of the officer including the officer's choices and manner of investigation."[1] Furthermore, in *State v. Stanley*, 153 Or App 16, 22, 955 P2d 764 (1998), we explained that

"[w]hen an inference of subjective probable cause [or reasonable suspicion] can reasonably be drawn from the evidence, and no evidence provides a contrary explanation

---

[1] *Bickford* involved the issue of whether a court could properly infer that a police officer had a subjective belief that he had *probable cause* to arrest the defendant. *Id.* at 388. The reasoning of *Bickford* is applicable in this instance because the probable cause standard and the reasonable suspicion standard contain similar subjective and objective requirements. The distinction between the two standards lies only in the quantum of evidence that is required to satisfy the particular standard and the contexts to which the standards apply. *See State v. Hammonds / Deshler*, 155 Or App 622, 627, 964 P2d 1094 (1998) (Supreme Court's probable cause reasoning is equally applicable to cases involving the lower standard of reasonable suspicion).

> of the officer's conduct, we will affirm a trial court's conclusion that subjective probable cause [or reasonable suspicion] existed. *See State v. Belt*, 325 Or at 11-12, 932 P2d 1177 (1997); *State v. Wetzell*, 148 Or App 122, 126, 939 P2d 106, *rev den* 325 Or 621 (1997); *State v. Chambers*, 147 Or App 626, 629-30, 938 P2d 793 (1997)."

Consequently, as part of our analysis of whether the trial court properly inferred that Hart subjectively believed that defendant had committed a crime before initiating the stop, we must examine whether there was any contrary explanation for Hart's conduct.

Although this is a close case, we conclude that the trial court had sufficient evidence before it to infer that Hart held a subjective belief that defendant had committed a crime before Hart stopped him. The circumstances surrounding the stop include the fact that defendant drifted within his lane[2] five times and properly signaled, pulled over and stopped when directed to do so. The officer's knowledge at the time of the stop was that he had observed defendant's conduct and that it was 3:44 a.m. Hart gave no additional testimony concerning his knowledge before the stop. Hart's experience and expertise at the time of the stop included the fact that he had been a police officer for nearly five years and had conducted approximately 30 DUII arrests. Hart's relevant training consisted of a four-hour course on DUII detection at the academy, a 24-hour course on DUII detection and field sobriety testing, and an eight-hour refresher course on drugs that impair driving. His conduct at the time included following defendant after Hart observed defendant's vehicle drifting and signaling defendant to pull over after Hart observed what he considered to be repeated erratic driving. All of the

---

[2] There was some disagreement in the briefs and at oral argument about whether defendant drifted from one lane into another or whether defendant drifted within a single lane. Hart testified, twice, that defendant drifted from the fog line to the "center broken line." Hart also testified that the road defendant was traveling on is a "two lane each way highway." Because the center line dividing the lanes traveling in opposite directions is a solid yellow line on such highways and the center line dividing the two lanes traveling in the same direction is a broken white line, we understand Hart's testimony to mean that defendant drifted within a single lane. *See* OAR 734-020-0005 (incorporating by reference the Manual on Uniform Traffic Control Devices).

above factors support an inference that Hart believed defendant was driving under the influence.

We have previously held that a police officer's "observation of a vehicle weaving in its own lane for a substantial distance" is sufficient evidence for an officer to believe that the driver of the vehicle was driving under the influence and to stop the vehicle for further investigation. *State v. Bailey*, 51 Or App 173, 175, 624 P2d 663, *rev den* 291 Or 1 (1981). Here, although the state presented no evidence regarding the distance defendant traveled, we do not consider that lack of evidence dispositive, because of Hart's testimony that he observed defendant's erratic driving pattern five times. Consequently, there is nothing significant that distinguishes *Bailey* from the case now before us. We therefore conclude that there was sufficient evidence before the trial court for it to infer that Hart subjectively believed that defendant was driving under the influence. The only issue that remains is whether there was any evidence that provides a contrary explanation of Hart's conduct.

■     Defendant argues that there are alternative reasons that explain Hart's conduct and that they constitute contrary explanations that prevent the trial court from inferring Hart's subjective belief.[3] The possible alternative reasons that defendant posits do not constitute evidence of a contrary explanation for Hart's conduct for the following reasons. Evidence that provides a contrary explanation of an officer's conduct must consist of evidence or testimony contained in the trial court record. Mere suggestions by defendant that there may have been alternative reasons for an officer's actions do not constitute evidence. Here, defendant points to nothing in the record, and we cannot find anything, that could lead to a conclusion that Hart stopped defendant for the reasons defendant posits. Defendant's alternative reasons are mere conjecture, unsupported by evidence.

■     Equally significant is the fact that defendant's alternative reasons constitute lawful reasons justifying a stop. We

---

[3] Defendant posits two alterative explanations for Hart's conduct. Defendant contends, as did the state's counsel at trial, that Hart could have been performing a community caretaking function pursuant to ORS 133.033. Defendant also contends that Hart could have stopped defendant for a traffic infraction.

have never held that an otherwise lawful stop of a person was unlawful merely because an officer was wrong in his or her subjective belief that a crime had been committed. Other lawful reasons for an officer's conduct do not constitute a *contrary* explanation. A contrary explanation is one where an officer's subjective belief would not be objectively reasonable under the circumstances or one that would imply that an officer's conduct was motivated by an unlawful purpose. Here, defendant points to no evidence in the record that would indicate that Hart believed anything other than defendant was driving while under the influence. Consequently, there is no contrary evidence of Hart's subjective belief at the time of the stop.

Because there was sufficient evidence before the trial court for it to infer, from the totality of the circumstances, that Hart subjectively believed that defendant committed the offense of driving under the influence and there was no evidence that provided a contrary explanation of Hart's conduct, we affirm.

Affirmed.