Argued and submitted January 21, 2015, affirmed February 18, 2016

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SCOTT QUE SHUPE,
*Defendant-Appellant.*

Wasco County Circuit Court
0900189CR; A152199

368 P3d 41

Leland R. Berger argued the cause and filed the brief for appellant.

Jamie Contreras, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Tiffany Keast, Assistant Attorney General.

Before Lagesen, Presiding Judge, and Duncan, Judge, and Flynn, Judge.*

---

* Duncan, J., *vice* De Muniz, S. J.

LAGESEN, P. J.

## LAGESEN, P. J.

A traffic stop led to the discovery of four pounds of marijuana in defendant's car. That discovery led to two charges against defendant: one for delivery of marijuana, ORS 475.860, and one for possession of marijuana, ORS 475.864. After a bench trial, a judge convicted defendant of those charges. Defendant appeals, assigning error to three rulings by the trial court: (1) the denial of defendant's motion to suppress the marijuana and other evidence discovered in defendant's car; (2) the granting of the state's motion *in limine* to exclude evidence of defendant's Washington State business license to dispense marijuana, defendant's permit to legally resell marijuana in Washington State, receipts for cash proceeds from defendant's Washington marijuana dispensary, and a letter from defendant's physician verifying that defendant could legally possess marijuana in Washington State, both as a caregiver and patient; and (3) the denial of defendant's motion to merge the guilty verdict for marijuana possession with the guilty verdict for marijuana delivery. For the reasons that follow, we affirm.

### MOTION TO SUPPRESS

Because a ruling in defendant's favor on his motion to suppress would necessitate a reversal of both convictions, we turn first to defendant's challenge to the trial court's denial of that motion. In that motion, defendant argued that the police officer who stopped him had neither reasonable suspicion that defendant was committing the crime of driving under the influence of intoxicants, ORS 813.010, nor probable cause to believe that defendant had committed the traffic violation of failure to maintain his lane, ORS 811.370,[1] and, consequently, that the stop violated Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution. The trial court concluded that the officer had reasonable suspicion to stop defendant for driving under the influence of intoxicants and, based on

---

[1] ORS 811.370 states that, except for commercial vehicles in multilane roundabouts, a person commits the offense of failure to drive within a lane if the person is operating a vehicle upon a roadway that is divided into two or more clearly marked lanes for traffic and the driver does not operate the vehicle, as nearly as practicable, entirely within a single lane.

that conclusion, denied the motion to suppress. We review to determine whether the trial court's factual findings are supported by constitutionally sufficient evidence in the record and whether the trial court correctly applied applicable principles of law, *State v. Ehly*, 317 Or 66, 75, 854 P2d 421 (1993), and affirm the trial court's ruling.

Consistently with our standard of review, we draw our statement of historical facts from the trial court's explicit findings, to the extent that the evidence in the record supports those findings. To the extent that the trial court did not make express findings on a particular point, we state the facts in a manner consistent with the trial court's ultimate conclusion, so long as the record supports that view of the facts. *State v. Regnier*, 229 Or App 525, 527, 212 P3d 1269 (2009) (citing *Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968)).

On August 21, 2009, at 2:00 p.m., Oregon State Police Trooper Prevett stopped defendant's car as it traveled north on Oregon Highway 97. Prevett had observed defendant's car drifting between the center line and the fog line. Although Prevett could not tell if defendant ever crossed the center line, he saw the passenger side tires of defendant's car either touch or cross the fog line. Prevett began to follow defendant and, as he caught up to defendant over the course of several miles, he saw defendant continue to weave in his lane and cross the fog line at least two more times. Prevett knew from his training that such conduct could be a sign of driving under the influence of intoxicants, and thought that his observations of defendant's driving gave him both probable cause to believe that defendant had committed the traffic violation of failing to maintain his lane, ORS 811.370, and reasonable suspicion that defendant was committing the crime of driving under the influence of intoxicants, ORS 813.010.

Almost immediately after approaching defendant's vehicle, Prevett noticed the smell of marijuana coming from defendant's car. Based on that smell, Prevett asked defendant how much marijuana he had and whether defendant had a medical marijuana card. In response, defendant gave Prevett his Washington State medical marijuana card.

Prevett noticed a small bag on the front seat and asked if he could see it. Defendant showed Prevett that small bag, which contained marijuana, and a jar with marijuana in it.

Prevett requested consent to search defendant's car, but defendant refused to grant consent. Prevett searched the car anyway and discovered four pounds of marijuana, which he seized. After Prevett seized the marijuana, defendant explained that he had purchased the marijuana in Bend, Oregon, and was transporting it to Washington where he would "dispense" it.

The trial court concluded that Prevett had reasonable suspicion to stop defendant for driving under the influence of intoxicants. The trial court did not address Prevett's other asserted basis for the stop—defendant's failure to drive within a lane. Before us, defendant reiterates the arguments he made to the trial court. We, like the trial court, conclude that Prevett's observations of defendant's driving gave him reasonable suspicion to stop defendant for driving under the influence of intoxicants.

An officer has reasonable suspicion to stop a suspect to investigate a crime when (1) the officer subjectively believes that the suspect may have committed a crime, or is about to commit one; and (2) that belief is objectively reasonable under the totality of the circumstances. ORS 131.605(5); ORS 131.615(1); *State v. Mitchele*, 240 Or App 86, 90-91, 251 P3d 760 (2010). However, "[r]easonable suspicion 'does not require that the facts as observed by the officer conclusively indicate illegal activity but, rather, only that those facts support the reasonable inference of illegal activity by that person.'" *State v. Dampier*, 244 Or App 547, 551, 260 P3d 730 (2011) (quoting *State v. Hiner*, 240 Or App 175, 181, 246 P3d 35 (2010)). Here, defendant does not dispute that Prevett subjectively believed that defendant may have been driving under the influence of intoxicants. Accordingly, the legal issue for us is whether Prevett's subjective belief was objectively reasonable, in the light of "the objective facts known to the officer at the time of the stop." *State v. Frias*, 229 Or App 60, 64, 210 P3d 914 (2009) (internal quotation marks and citation omitted).

We previously have concluded—on several occasions—that a police officer's observation of a vehicle weaving in its own lane provides a sufficient basis to reasonably believe that the driver of the vehicle is operating the vehicle under the influence and to stop the vehicle for further investigation. *State v. Kusaj*, 174 Or App 575, 579-80, 28 P3d 1182 (2001), *rev den*, 333 Or 400 (2002); *State v. Gilbertz*, 173 Or App 90, 94, 20 P3d 252 (2001) (holding that officer who witnessed driver drifting within a lane at least five times at 3:44 a.m. had reasonable suspicion to stop driver for driving under the influence of intoxicants); *State v. Wright*, 94 Or App 468, 470-71, 765 P2d 1251 (1988), *rev den*, 307 Or 514 (1989) (concluding that officer had reasonable suspicion that driver was driving under the influence of intoxicants based on observation of car's "jerking" erratically back and forth across lane); *State v. Bailey*, 51 Or App 173, 175, 624 P2d 663, *rev den*, 291 Or 1 (1980) (explaining that officer's "observation of vehicle weaving in its own lane for a substantial distance" gave officer reasonable suspicion to stop driver for driving under the influence of intoxicants). In view of that case law, we are persuaded that Prevett's observations of defendant's car, together with Prevett's knowledge that such driving behavior may indicate impairment, made it reasonable for Prevett to believe that defendant might be driving under the influence of intoxicants. Although defendant relies extensively on *United States v. Colin*, 314 F3d 439 (9th Cir 2002), to argue for a different conclusion, we are neither bound by that opinion nor persuaded that it would dictate a different conclusion here.[2] Accordingly, we uphold the trial court's denial of defendant's motion to suppress.

## STATE'S MOTION *IN LIMINE*

Defendant next assigns error to the trial court's grant of the state's motion *in limine* to exclude documentary and testimonial evidence related to defendant's Washington

---

[2] In *Colin*, the Ninth Circuit held that a police officer who observed a vehicle traveling in the right fog lane for approximately 10 seconds, changing lanes and traveling on the left side of the left lane for approximately 10 seconds did not have reasonable suspicion that the defendant was violating California's anti-lane straddling statute (California Vehicle Code Section 21658(a)), nor reasonable suspicion that the defendant was driving under the influence of intoxicants. 314 F3d at 445.

marijuana business license, Washington marijuana reseller permit, receipts for the cash proceeds from defendant's dispensary in Washington, and a letter from defendant's physician verifying defendant's ability to possess marijuana legally in Washington State both as a caregiver and patient.[3] In its motion, the state argued that the evidence relating to defendant's Washington business and licenses either was not relevant and, thus, subject to exclusion under OEC 401, or that its probative value was substantially outweighed by the danger of unfair prejudice or confusion, so as to render it subject to exclusion under OEC 403.

Defendant opposed the motion. Defendant explained that his theory of defense was that he intended to deliver the marijuana that was in his car to his patients in Washington, where defendant was authorized to operate a marijuana dispensary and that, as a result, "there is no crime here" in Oregon. Defendant contended that evidence of his Washington licenses and business was probative of that theory.

The trial court excluded the evidence, explaining:

"I understand that the defendant's position is that his medical marijuana documentation is relevant because his defense * * * regarding motive of delivery is that his intent was to deliver in Washington, not to deliver it in Oregon.

"Based on the reading of the cases * * * I do not find that that evidence is relevant."

On appeal, defendant renews the argument that he made to the trial court: The evidence related to his Washington license and business was relevant to show "that the ultimate delivery was, at least arguably and ultimately actually, not a crime which, in turn, would make the

---

[3] In *State v. Shupe*, 172 Wash App 341, 289 P3d 741 (2012), *rev den*, 302 P3d 180 (2013), defendant appealed convictions for delivery, possession with intent to deliver, and manufacture of marijuana. The Washington Court of Appeals reversed defendant's convictions. The court concluded that, with respect to some of those charges, defendant had proved the affirmative defense to the charges provided by Washington's Medical Use of Marijuana Act (MUMA). As the Washington Court of Appeals has explained, "MUMA provides an affirmative defense for patients and providers against Washington criminal laws." *State v. Markwart*, 182 Wash App 335, 353, 329 P3d 108, 117, *rev granted*, 337 P3d 327 (2014).

attempt to commit delivery (which is delivery under Oregon law) similarly not a crime." Although defendant's argument is not entirely clear, that appears to be defendant's sole theory as to why the evidence was relevant.[4] The difficulty for defendant, however, is that defendant has provided us with no authority for the legal proposition at the heart of his argument: Transporting marijuana through Oregon with the intent to deliver it in Washington in accordance with a Washington medical marijuana license does not violate Oregon's prohibition on the delivery of marijuana contained in ORS 475.860.

Moreover, if anything, the legal authority of which we are aware tends to refute the idea that defendant's theory of defense is consistent with Oregon law. "Delivery," for purposes of ORS 475.860's prohibition on the unlawful delivery of marijuana, is defined as "the actual, constructive or attempted transfer, other than by administering or dispensing, from one person to another of a controlled substance, whether or not there is an agency relationship." ORS 475.005(8).[5] As a result of that definition of "delivery," a person commits the *completed* offense of delivery under ORS 475.860 not only by an actual transfer of marijuana from one person to another, but also by taking a "substantial step" toward the transfer of marijuana from one person to another. *State v. Boyd*, 92 Or App 51, 54-55, 756 P2d 1276, *rev den*, 307 Or 77 (1988).[6]

---

[4] Defendant does not argue, for example, that the evidence was relevant to show that, at the time he was stopped in Oregon, he had not yet formed the intent to transfer the marijuana, or that he affirmatively intended to retain the marijuana for personal use and had no intent to transfer it. Rather, as defendant acknowledges in his brief, "[Defendant] admitted that he was transporting this marijuana (which was conceded below to be in excess of the [Oregon Medical Marijuana Act] Limits) to his dispensary in Spokane for the purpose of re-distributing it to patients to whom he was authorized to distribute under Washington law." Because defendant has not argued, either below or on appeal, that the evidence was relevant for those purposes, we do not address whether the trial court's exclusion of the evidence of defendant's Washington licenses and business would have been erroneous if those were the theories of defense that defendant had sought to present.

[5] Defendant does not argue that evidence of his Washington license and business would be relevant to demonstrate that he was "administering" or "dispensing" a controlled substance within the meaning of ORS 475.005(8).

[6] In *Boyd* we looked to ORS 161.405, which defines "attempt" for the purposes of inchoate attempt crimes, to ascertain the meaning of the word "attempt" in

In other words, the plain terms of ORS 475.005(8) indicate that the legislature intended to criminalize a broad range of conduct connected to drug trafficking, including those acts that substantially further an intended transfer of marijuana. We see nothing in ORS 475.005, or the other provisions of ORS chapter 475, to support the inference that the legislature intended to exempt from the statute's coverage conduct in furtherance of an intended transfer of marijuana, such as defendant's act of transporting four pounds of marijuana through Oregon, where the ultimate transfer is intended to take place in a different state, under circumstances that might make it legal in that state.[7] Had the legislature intended to authorize such an exception, so as to permit people to transport marijuana through Oregon for the purpose of lawfully delivering it elsewhere, we think it likely that it would have said so expressly.

Beyond that, to the extent defendant's argument can be understood to suggest that either the Oregon Medical Marijuana Act or Washington's MUMA entitled him to defend against the Oregon delivery charges based on his Washington licenses, he has identified nothing in either act to support that point. And, again, the authority of which we are aware is to the contrary. In *State v. Berringer*, 234 Or App 665, 670-71, 229 P3d 615, *rev den*, 348 Or 669 (2010), we concluded that a defendant's authorization to possess marijuana under California's Compassionate Use Act (CCUA) "does not (and could not) provide a defense against enforcement of Oregon's marijuana laws in Oregon." We reasoned in part that, by its plain terms, the CCUA affords a defense to certain people against the enforcement of *California's* marijuana laws, and does not purport to create a defense to the marijuana laws of other states. *Id.* at 671.

---

ORS 475.005(8). 92 Or App at 53-54. In so doing, however, we did not suggest that the offense of delivery, when committed by means of an attempted transfer of a controlled substance, is anything other than the completed offense of delivery. Rather, we recognized that the attempted transfer of a controlled substance, the actual transfer of a controlled substance, and the possession of a controlled substance with the intent to deliver all constitute the offense of delivery. *Id.* at 54-55.

[7] Although defendant argues that his Washington licenses mean that his delivery of marijuana to his customers in Washington would not be a crime, that characterization of the effect of defendant's licenses is not strictly accurate. As we note below, defendant's licenses give him a potential *affirmative defense* to Washington state law charges of unlawful possession or delivery of marijuana.

Here, too, Washington's MUMA, by its plain terms, creates an affirmative defense to the enforcement of the "state law" of Washington. *See* RCW 69.51A.005; *State v. Markwart*, 182 Wash App 335, 353, 329 P3d 108, 117, *rev granted*, 337 P3d 327 (2014) ("MUMA provides an affirmative defense for patients and providers against *Washington* criminal laws." (Emphasis added.)). Consequently, under *Berringer*, the affirmative defense under MUMA that defendant would be entitled to assert in a prosecution for violation of the Washington marijuana laws is not available to him here.

In sum, defendant has identified no legal authority for the proposition that his act of transporting four pounds of marijuana through Oregon would not be a crime in Oregon if his ultimate intended delivery in Washington would have been lawful under Washington law, and we have been able to locate no authority to support that proposition. On the contrary, pertinent authority indicates otherwise, that the legislature intended to criminalize defendant's conduct in Oregon, notwithstanding the fact that defendant's ultimate intended delivery in Washington may have been lawful there (or that defendant may have had an affirmative defense under Washington's MUMA to any delivery charges in that state). Under those circumstances—where the theory that defendant sought to prove with the excluded evidence is inconsistent with applicable law, and where defendant does not contend that the evidence was relevant for any other purpose—we are not persuaded that the trial court erred by excluding the evidence related to defendant's Washington marijuana licenses and business as irrelevant.

## MERGER

In his final assignment of error, defendant asserts that the trial court erred when it declined to merge his conviction for possession of marijuana with his conviction for delivery of marijuana. Defendant acknowledges that his argument fails under *State v. Sargent*, 110 Or App 194, 822 P2d 726 (1991). However, he contends that the Oregon Supreme Court's decision in *State v. Blake*, 348 Or 95, 228 P3d 560 (2010), demonstrates that *Sargent* was wrongly decided. In *Blake*, the Supreme Court held that a conviction

for criminal possession of a forged instrument merges with a conviction for first-degree forgery based on acts committed during the same criminal episode. 348 Or at 102-03. The court reasoned, in part, that it was impossible for a person to commit the crime of first-degree forgery without having sufficient control over the forged instrument so as to be deemed in possession of it, supporting the conclusion that convictions for the two offenses merged. *Id.* at 101-03.

We disagree that *Blake* calls into question our reasoning in *Sargent*. In *Sargent*, we concluded that it is possible to commit the crime of delivery of a controlled substance without ever having possession of the controlled substance by "solicit[ing] another to engage in conduct constituting an element of the crime of delivery." *Sargent*, 110 Or App at 198. Based on that conclusion, we held that "possession and delivery do not merge as a matter of law, because it is possible to commit the crime of delivery without having a possessory interest in the controlled substance." *Id.* In other words, unlike the forgery offenses at issue in *Blake*, it is possible to commit the offense of delivery of a controlled substance without having any dominion or control over the substance to be transferred. Accordingly, we reject defendant's contention that the trial court erred when it did not merge his convictions for possession and delivery.

Affirmed.