Argued and submitted June 24, 2022; convictions on Counts 1, and 5 reversed and remanded for entry of judgment of conviction for delivery of methamphetamine, convictions on Counts 2 and 6 reversed and remanded for entry of judgment of conviction for delivery of heroin, remanded for resentencing, otherwise affirmed March 22, 2023

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

LAWRENCE JAMES SERBIN,
aka Larry James Serbin,
aka Larry James Serbin, Jr.,
*Defendant-Appellant.*

Multnomah County Circuit Court
19CR37201; A173650

527 P3d 794

Defendant appeals from a judgment of conviction for, among other things, two counts of delivery of controlled substances and two corresponding counts of unlawful possession of controlled substances. He assigns error to the trial court's denial of his request to merge the verdicts on the two counts of possession with the verdicts on the corresponding delivery counts. *Held*: In light of *State v. Hubbell*, 314 Or App 844, 500 P3d 728 (2021), *rev allowed*, 369 Or 504 (2022), the Court of Appeals held that pursuant to ORS 161.067(1), possession, as defined by ORS 161.015(9), is subsumed in delivery, as defined by ORS 475.005(8). In doing so, the court overruled *State v. Sargent*, 110 Or App 194, 822 P2d 726 (1991), which relied on its understanding of the elements of the crime of delivery of a controlled substance as articulated in *State v. Boyd*, 92 Or App 51, 756 P2d 1276, *rev den*, 307 Or 77 (1988)—an understanding that the court held was plainly wrong in *Hubbell*. Because, post-*Hubbell*, the crime of delivery cannot be committed without also committing the crime of possession, the court concluded that the trial court erred when it did not merge each delivery verdict with its corresponding possession verdict.

Convictions on Counts 1 and 5 reversed and remanded for entry of judgment of conviction for delivery of methamphetamine; convictions on Counts 2 and 6 reversed and remanded for entry of judgment of conviction for delivery of heroin; remanded for resentencing; otherwise affirmed.

Eric J. Bloch, Judge.

Anne Fujita Munsey, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Julia Glick, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, and Joyce, Judge, and Jacquot, Judge.*

JOYCE, J.

Convictions on Counts 1, and 5 reversed and remanded for entry of judgment of conviction for delivery of methamphetamine; convictions on Counts 2 and 6 reversed and remanded for entry of judgment of conviction for delivery of heroin; remanded for resentencing; otherwise affirmed.

_____

* Jacquot, J., *vice* James, J. pro tempore.

**JOYCE, J.**

Defendant appeals from a judgment of conviction for delivery of methamphetamine (Count 1), delivery of heroin (Count 2), felon in possession of a firearm (Count 3), unlawful possession of a firearm (Count 4), unlawful possession of methamphetamine (Count 5), and unlawful possession of heroin (Count 6). He assigns error to the trial court's denial of his request to merge the verdicts on the two counts of possession with the verdicts on the corresponding delivery counts. In *State v. Sargent*, 110 Or App 194, 198, 822 P2d 726 (1991), we held that verdicts for the crimes of possession and delivery do not merge because it is possible to commit the crime of delivery of a controlled substance without having a possessory interest in the controlled substance. Our analysis in *Sargent* was based on our understanding of the elements of the crime of delivery of a controlled substance as articulated in *State v. Boyd*, 92 Or App 51, 756 P2d 1276, *rev den*, 307 Or 77 (1988)—an understanding that we recently held was plainly wrong in *State v. Hubbell*, 314 Or App 844, 500 P3d 728 (2021), *rev allowed*, 369 Or 504 (2022). Defendant argues that, in light of our current understanding of the elements of the crime of delivery, as construed in *Hubbell*, the crime of delivery cannot be committed without also committing the crime of possession, such that the trial court was required to merge the verdicts. We agree with defendant, overrule our decision in *Sargent*,[1] and reverse and remand for merger and resentencing.

The issue before us is a purely legal question. We review for legal error whether offenses merge. *State v. Jackson*, 313 Or App 708, 713, 495 P3d 171 (2021), *rev den*, 369 Or 110 (2021). Under ORS 161.067(1), "[w]hen the same conduct or criminal episode violates two or more statutory provisions and each provision requires proof of an element that the others do not, there are as many separately punishable offenses as there are separate statutory violations." Put more simply, "merger is required when the elements of one offense are subsumed in the elements of the other offense."

---

[1] Because this opinion overrules our existing precedents, the panel specifically advised all members of the court of the effect of its decision, but neither the chief judge nor a majority of the regularly elected or appointed judges referred, under ORS 2.570(5), the cause to be considered en banc.

*Jackson*, 313 Or App at 713 (citing *State v. Merrill*, 303 Or App 107, 123, 463 P3d 540 (2020), *adh'd to as modified on recons*, 309 Or App 68, 481 P3d 441 (2021)); *see also State v. Blake*, 348 Or 95, 99, 228 P3d 560 (2010) ("[I]f one offense contains X elements, and another offense contains X + 1 elements, the former offense does not contain an element that is not also found in the latter offense. In that situation, under ORS 161.067(1), there is only one separately punishable offense.").

When analyzing ORS 161.067(1), we consider three questions: "'(1) Did defendant engage in acts that are "the same conduct or criminal episode," (2) did defendant's acts violate two or more "statutory provisions," and (3) does each statutory "provision" require "proof of an element that the others do not."'" *State v. Haddon*, 286 Or App 191, 194, 399 P3d 458 (2017) (quoting *State v. Crotsley*, 308 Or 272, 278, 779 P2d 600 (1989)); *see also Jackson*, 313 Or App at 715 (explaining that the controlling question "is whether each of the statutes that define the relevant criminal offenses requires proof of an element that the other does not"). If, focusing on "the elements of the crimes alleged, not the particular facts that the state alleged to establish those elements[,]" we find that the answer to the first two factors is "yes" and the answer to the third factor is "no", then merger is required. *State v. Marks*, 319 Or App 641, 644, 510 P3d 914 (2022) (citing *Haddon*, 286 Or App at 194).

As noted at the outset, earlier cases concerning delivery of controlled substances were based on an interpretation the statutory definition of "delivery," ORS 475.005(8), that we have since disavowed. In *Boyd*, we relied on the elements of the inchoate crime of attempt, ORS 161.405(1),[2] to determine that a person commits the crime of delivery via attempted transfer when that person "intentionally engages in conduct which constitutes a substantial step toward commission of the crime." 92 Or App at 54. In *Sargent*, we concluded that, "if a person solicits another to engage in conduct constituting an element of the crime of delivery," they have committed delivery by taking a substantial step toward

---

[2] ORS 161.405(1) states, "A person is guilty of an attempt to commit a crime when the person intentionally engages in conduct which constitutes a substantial step toward commission of the crime."

commission of the crime.[3] 110 Or App at 198. Consequently, we concluded that "possession and delivery do not merge as a matter of law, because it is possible to commit the crime of delivery without having a possessory interest in the controlled substance."[4] *Id.*

In *Hubbell*, we overruled *Boyd* and disavowed the underlying rationale of *Sargent*. In *Hubbell*, we interpreted the delivery statute and held that the phrase "attempted transfer" in that statute requires more than the inchoate crime of "attempted delivery." 314 Or App at 848 (explaining that "*Boyd's* leap—defining the word 'attempt' within a substantive statute to be the inchoate crime of attempt—was not just wrong but plainly wrong"). We went on to hold that proof that the defendant engaged in a "substantial step" toward the crime of delivery is not sufficient to prove the completed crime of delivery by means of an actual, constructive, or attempted transfer. *Id.* at 870-71. Because *Sargent's* rationale was based on *Boyd*, and because we engaged in the "substantial step" analysis to reach our ultimate conclusion in *Sargent*, we must now consider whether, in light of *Hubbell*, possession is subsumed in delivery. *Sargent*, 110 Or App at 198. For the reasons that follow, we conclude that possession does not require proof of an element that delivery does not, and overrule *Sargent's* conclusion that possession is not subsumed in delivery under ORS 161.067(1).

The first two considerations under ORS 161.067(1) are met: The parties do not contest that defendant engaged in acts that constituted the same conduct or criminal

---

[3] While *Sargent* does not explicitly cite *Boyd*, the court's reliance on the *Boyd* delivery is evident: "Under [the definition of 'attempt' in ORS 161.405], we have consistently held that an attempt to transfer a controlled substance is treated the same as a completed transfer." *Sargent*, 110 Or App at 197. *Sargent* cites three cases in support of this assertion, all of which cite *Boyd*: *State v. Fulmer*, 105 Or App 334, 336-37, 804 P2d 515 (1991); *State v. Stalbert*, 99 Or App 582, 587, 783 P2d 1005 (1989); and *State v. Aguilar*, 96 Or App 506, 510, 773 P2d 17, *rev den*, 308 Or 315, 779 P2d 618 (1989).

[4] We have consistently cited *Sargent* in maintaining that possession is not subsumed in delivery. *See, e.g.*, *State v. Scott*, 283 Or App 566, 570, 388 P3d 1148 (2017); *Haddon*, 286 Or App at 198-99 (citing *State v. Shupe*, 276 Or App 496, 506, 368 P3d 41 (2016), *rev den*, 360 Or 423 (2016)); *State v. Guzman*, 140 Or App 347, 352, 914 P2d 1120 (1996) *overruled on other grounds by State v. Daniel*, 222 Or App 362, 193 P3d 1021 (2008); *State v. Lynch*, 119 Or App 97, 101, 849 P2d 556 (1993).

episode, nor that defendant's acts violated two or more statutory provisions. *Blake*, 348 Or at 98 ("Where the legislature defines each crime in a separately numbered and labeled statutory section, as it does in this instance, it is difficult to see how those sections can be anything other than separate statutory provisions for purposes of ORS 161.067(1)."). Defendant's delivery and possession convictions for heroin and methamphetamine arise out of an arrest for a single hand-to-hand drug deal, and defendant was convicted under four separate statutory provisions.

The dispute therefore centers on the third question: whether each of the statutes that defines delivery and possession requires proof of an element that the other does not. *Jackson*, 313 Or App at 715. Our analysis starts with examining, and understanding, the elements of delivery and possession. ORS 475.890(1)[5] and ORS 475.850(1)[6] state in relevant part that "it is unlawful for any person to deliver," respectively, methamphetamine and heroin. "Delivery," for purposes of both statutes, is defined as

> "the actual, constructive or attempted transfer, other than by administering or dispensing, from one person to another of a controlled substance, whether or not there is an agency relationship."

ORS 475.005(8). "We presume that each of those types of transfers refers to something different: an actual, *i.e.*, successful or completed transfer; a constructive, *i.e.*, inferred or presumed transfer based on the circumstances; and an attempted, *i.e.*, unsuccessful or incomplete transfer." *Hubbell*, 314 Or App at 869-70 (citing *Dept. of Transportation v. Stallcup*, 341 Or 93, 101, 138 P3d 9 (2006) (explaining that when the legislature uses different terms in a statute, it likely intended them to have different meanings)).

We examine each method of transfer in turn. "Actual," for purposes of "actual transfer," means "'existing in fact or reality : really acted or acting or carried out— contrasted with *ideal* and *hypothetical*,' or 'in existence or

---

[5] ORS 475.890(1) states, "Except as authorized by ORS 475.005 to 475.285 and 475.752 to 475.980, it is unlawful for any person to deliver methamphetamine."

[6] ORS 475.850(1) states, "It is unlawful for any person to deliver heroin."

taking place at the time : PRESENT, CURRENT <caught in the ~ commission of the crime>.'" *Hubbell*, 314 Or App at 869 (quoting *Webster's Third New Int'l Dictionary* at 22 (unabridged ed 2002) (emphasis in original)).

In defining "constructive transfer" as "inferred or presumed transfer based on the circumstances," we explained in *Hubbell* that "'constructive' means 'derived from or depending on construction or interpretation : not directly expressed : INFERRED—often used in law of an act or condition assumed from other acts or conditions which are considered by inference or by public policy as amounting to or involving the act or condition assumed.'" 314 Or App at 869 (quoting *Webster's* at 489); *see also Hubbell*, 314 Or App at 870 n 10 (quoting *Black's Law Dictionary* 314 (6th ed 1990)) (explaining that "constructive transfer" is defined as "'[a] transfer of an item (*e.g.*, a controlled substance), *either belonging to an individual or under the individual's control*, by some other person or agency at the insistence or direction of the individual accused of such constructive transfer'" (emphasis added)).

Post-*Hubbell*, "attempted" in this context is interpreted "in accordance with our ordinary approach to statutory construction." *Hubbell*, 314 Or App at 867. "The word 'attempted' modifies 'transfer,' which is not synonymous with the crime of delivery of a controlled substance (despite what *Boyd* may have said)." *Id.* at 868. Thus, "attempted transfer" is defined based on its ordinary meaning—as an unsuccessful or incomplete actual or constructive transfer. *Id.* at 870. As we explained in *Hubbell*:

> "To prove an 'attempted' transfer, the state's evidence must give rise to an inference that defendant made some effort to cause the controlled substances to pass from one person to another. It is not sufficient for the state to show the defendant's purpose in acquiring drugs; it must also prove the element of a transfer, either actual, constructive, or attempted."

*Id.* at 872.

Turning to the concept of "transfer," the verb 'transfer' generally means, "an act of 'transferring,' that is, 'caus[ing] to pass from one person or thing to another,' or

'carry[ing] or tak[ing] from one person or place to another : TRANSPORT[ING].'" *Id.* at 868 (quoting *Webster's* at 2427). The noun "transfer" refers to "'the conveyance of right, title, or interest in either real or personal property from one person to another by sale, gift, or other process,' or * * * 'the removal or acquisition of property by mere delivery with intent of the parties involved to transfer the title.'" *Hubbell*, 314 Or App at 868 (quoting *Webster's* at 2427; *see also Black's* at 1497 (defining "transfer" to include "[t]he sale and every other method, direct or indirect, of disposing of or parting with property or with an interest therein").

At the core of actual, constructive, and attempted transfer, a person must have enough control over property, whether it be a right, title, or other interest, to convey that specific piece of property to another person. *See State v. O'Hare*, 309 Or App 357, 363, 481 P3d 953 (2021) (explaining that ORS 475.890(1) criminalizes "'the [singular] transfer' of methamphetamine" and that "use of the singular determinative 'the' indicates that the legislature * * * intended to require the state to prove the existence of a particular actual, constructive, or attempted transfer"). Restated, to transfer or attempt to transfer controlled substances for purposes of the delivery statute, a person must have actual physical control or otherwise exercise control over the controlled substances.

The next question is whether that level of control also constitutes the crime of possession—that is, whether a defendant can transfer or attempt to transfer without also possessing the drugs.[7] We agree with defendant that none of those forms of delivery can be accomplished without possession. Possession requires a person "to have physical possession or otherwise to exercise dominion or control over property." ORS 161.015(9). A person can possess something by (1) actual possession or (2) constructive possession. *State v. Daline*, 175 Or App 625, 631, 30 P3d 426 (2001). Actual possession occurs when a person has actual physical control of the property. *Id.* at 632. Constructive possession occurs

_____

[7] ORS 475.894(1) and ORS 475.854(1) provide that "[i]t is unlawful for any person knowingly or intentionally to possess[,]" respectively, methamphetamine and heroin.

when a defendant "'knowingly exercise[s] control over, or ha[s] the right to control'" the controlled substances. *State v. Kulick*, 314 Or App 680, 682, 497 P3d 789 (2021) (quoting *State v. Evans*, 161 Or App 86, 89, 983 P2d 1055 (1999)). Yet until a person possesses the property, by actual physically controlling, knowingly exercising control over, or having the right to control the property, they cannot make an effort to deliver it to a person via actual, constructive, or attempted transfer—a person can only relinquish that which belongs to them or is under their control. Possession under ORS 475.894(1) and ORS 475.854(1) thus does not require proof of an element that is not also required to prove the crime of delivery under ORS 475.890(1) and ORS 475.850(1). *Sargent*'s conclusion to the contrary must thus be overruled.

In arguing for a contrary result, the state acknowledges that, post-*Hubbell*, "attempted transfer" requires "some specific more overt act" that causes controlled substances to pass from one person to another but argues that the "more overt act" still need not include possession. For instance, the state hypothesizes that a person delivers without possession where the person offers to sell cocaine to an undercover informant at an arranged time and place, and when police arrest the person at the arranged time and place, they do not find the cocaine in his possession, because the person was planning to take the informant to meet a supplier who would then sell the cocaine to the informant. But a person in a hypothetical situation like that does not deliver the substance without possession; in fact, they do not deliver the substance at all. They do not actually or constructively deliver the substance, as it does not pass from one person to another. Further, they do not engage in "attempted transfer," because they have not unsuccessfully or incompletely made an effort to cause the controlled substances to pass from one person to another via actual or constructive transfer.[8] *Hubbell*, 314 Or App at 872.

___

[8] That is not to say that the person in this scenario might not have committed an attempted *delivery*. See *Hubbell*, 314 Or App at 870 (recognizing that someone who has taken a substantial step towards the crime of delivery but has not yet attempted the transfer itself will have committed the inchoate crime of attempted delivery of a controlled substance).

The state further surmises that in joint enterprise cases, people can be active participants in delivery of controlled substances even if they do not possess said controlled substances. We agree that in joint enterprise cases, people can be active participants in delivery of controlled substances even if they do not possess them—potentially through committing other crimes, such as attempted delivery and solicitation. The question here, however, is whether people can deliver controlled substances, via actual, constructive, or attempted transfer, without at least constructive possession of controlled substances. As we have explained, they cannot. Delivery, as defined by ORS 475.005(8), requires possession, as defined by ORS 161.015(9).[9]

In sum, we conclude that the trial court erred when it did not merge Count 5 with Count 1 for a single conviction for delivery of methamphetamine and when it did not merge Count 6 with Count 2 for a single conviction for delivery of heroin. The judgment of the circuit court is reversed and the case is remanded for merger and resentencing.

Convictions on Counts 1 and 5 reversed and remanded for entry of judgment of conviction for delivery of methamphetamine; convictions on Counts 2 and 6 reversed and remanded for entry of judgment of conviction for delivery of heroin; remanded for resentencing; otherwise affirmed.

---

[9] We also understand the state to be asserting that possession is not subsumed in delivery because a person can be guilty of delivering controlled substances via aiding and abetting, which does not require possessing those controlled substances. Accomplice liability makes a person statutorily liable for all of the principal's acts, *including possession*, even though that person may not have committed any of the acts that the crime entails. ORS 161.155. *See Blake*, 348 Or at 101 ("Because the principal who utters a forged instrument also necessarily possesses it, a person who aids and abets the principal in the crime of forgery by definition also aids and abets the principal in the crime of criminal possession of a forged instrument."); *State v. Kimbrough*, 364 Or 66, 84, 431 P3d 76 (2018) ("Under Oregon law, liability under ORS 161.155 is a form of liability for 'conduct of another person constituting a crime,' not a separate way of committing the crime."). That example therefore is inapt.